**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
August 2, 2012

No. 11-20139
cons/w No. 11-20273

Lyle W. Cayce
Clerk

ANTHONY G. PETRELLO,

Plaintiff - Appellant

v.

MATTHEW W. PRUCKA;
SHERYL S. PRUCKA;
RAHUL NATH; USHA NATH,

Defendants - Appellees

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 4:08-CV-1933

Before JONES, Chief Judge, and OWEN and HIGGINSON, Circuit Judges.
PER CURIAM:[*]

In this most unusual case, Appellant, a resident of one of the toniest streets in Houston, Texas, has been suing his former and current next-door neighbors for five years in state and federal court because appellant's oral offer to buy the neighbors' house was rejected. He claimed breach of contract in state court—and lost. In federal court, he pursued claims under and related to the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-20139
cons/w No. 11-20273

Fair Housing Act, 42 U.S.C. § 3604(f)(1)—and lost. Appellees received a favorable judgment as a matter of law and their attorneys' fees. On appeal, Petrello raises numerous issues challenging every major and minor point in the district court's decision, but the case boils down to three easily resolved questions:

1. Was Petrello "qualified to purchase" the Pruckas' house at 8 Remington Lane?

2. Is there any basis to support a conspiracy between the sellers (Pruckas) and buyers (Naths) to violate the Fair Housing Act?

3. Are the appellees' attorneys' fee awards sustainable?

For the following reasons, we **AFFIRM**.

When Anthony Petrello learned that the multimillion-dollar mansion next door to his own was about to go on the market in 2007, he telephoned Matt Prucka and offered to purchase it for $6.5 million. Petrello claims he wanted to buy the house and configure it for his severely disabled daughter, then not yet a teenager, to inhabit when she grew up. Prucka declined the offer, placed the house on the market for about $8.3 million, and in a short time, secured from the Naths a written offer for the full list price without contingencies. Petrello, having been informed of this, was only willing to offer $8.2 million—orally. When Prucka and the Naths signed a sale contract and the Naths paid $75,000 earnest money, the Naths did not know Petrello and had no knowledge of his motives nor specific knowledge about his competing offer. Two days later, however, Petrello encountered Rahul Nath during a walk-through of the house, explained his intentions for his daughter and asked Nath to step aside. Nath refused.

Petrello's lawsuits began immediately with a state court petition seeking specific performance of an alleged oral contract and attorneys' fees. By filing a

No. 11-20139
cons/w No. 11-20273

lis pendens, he attempted unsuccessfully to hold up the closing, which occurred in January 2008. After six months of litigation, Petrello first asserted, in a Fourth Amended Petition, that the Pruckas and Naths had conspired and engaged in handicap discrimination against his family in violation of the Fair Housing Act, ("FHA") 42 U.S.C. § 3604(f)(1), forbidding discrimination in the sale or rental of dwellings by virtue of a purchaser's or planned occupant's handicap, and 42 U.S.C. § 1985(3). This and associated claims were removed to federal court. It is unnecessary to recount the procedural history, which includes voluminous discovery, multiple legal claims, a hung jury, and three federal judges before the dispositive judgment was entered. Because the court entered judgment as a matter of law, this court's standard of review is whether, "after considering the evidence presented and viewing all reasonable inferences in the light most favorable to the nonmovant, the facts and inferences point so strongly in favor of the movant that a rational jury could not arrive at a contrary verdict." FED. R. CIV. P. 50(a)(1); *Murray v. Red Kap Indus., Inc.*, 124 F.3d 695, 697 (5th Cir. 1997) (internal citation omitted). We address each of the material issues identified above.

### 1. FHA Claim

To assert a prima facie claim of housing discrimination under this section of the FHA, a plaintiff must prove that he (or a family member) is a member of a protected class; he applied for and was "qualified to purchase" the housing; he was rejected; and the housing remained available to other similarly situated purchasers thereafter. *Lindsay v. Yates*, 498 F.3d 434, 438-39 (6th Cir. 2007); *Mitchell v. Shane*, 350 F.3d 39, 47 (2d Cir. 2003). The significant issue here is whether Petrello was a "qualified purchaser." The district court held he was not because his oral offer to purchase did not satisfy the Texas real estate statute of frauds and was therefore unenforceable. TEX. BUS. & COMM. CODE ANN.

No. 11-20139
cons/w No. 11-20273

§ 26.01(b)(4) (Vernon 2005).    (The Texas Court of Appeals subsequently confirmed the district court's reading of the state law.)

Neither the parties' extensive briefing nor our research has located a case directly on point.  Cases from outside this circuit state that to be "qualified," a buyer seeking FHA relief must "meet the terms of the seller," *McDonald v. Coldwell Banker*, 543 F.3d 498, 504 (9th Cir. 2008), and his offer must be "similarly situated" to that of competing purchasers.  *Id*.  We need not rule definitively on whether the noncompliance of Petrello's offer with the Texas statute of frauds suffices to defeat his prima facie case, however, because taken in conjunction with the undisputed facts that he did not meet the listing terms, offered a lower purchase price than the Pruckas sought and obtained from the Naths, and did not back up his offer with a writing of any kind or earnest money, he was both unqualified and dissimilar from the Naths.

In addition to his failure to set out a prima facie case under the FHA, Petrello's claim fails for lack of a remedy.  He disclaims money damages and is thus precluded from seeking punitive damages or attorneys' fees.  *La. ACORN Fair Hous. v. LeBlanc*, 211 F.3d 298, 303 (5th Cir. 2000) (FHA disallows punitive damages in absence of actual damages or constitutional violation); *Farrar v. Hobby*, 506 U.S. 103, 114-16, 113 S. Ct. 566, 574-75 (1992) (no attorneys' fee award without meaningful legal relief).  "All" Petrello seeks is equitable relief, *i.e.*, title to the house.  42 U.S.C. § 3613(c)(1).  No court would grant such discretionary, equitable relief on this record.  Petrello already owns a sizeable lot adjacent to his mansion, which he purchased prior to offering to buy 8 Remington Lane.  The Naths were bona fide purchasers *vis-a-vis* Petrello's FHA claim, as they signed a contract and then closed the sale knowing only that he asserted breach of contract, not housing discrimination, against them.  The Naths have now owned and occupied the house for four years.  Petrello's initial

state law claim to the property has been rejected. The equities strongly disfavor granting Petrello the only relief he deems acceptable.

### 2. Conspiracy Claim

Because there is no actionable FHA claim against the appellees, Petrello's civil conspiracy claim fails, as the district court held. *Hilliard v. Ferguson*, 30 F.3d 649, 652-53 (5th Cir. 1994) (conspiracy requires agreement to violate the law).

### 3. Attorneys' Fee Awards

The district court concluded that the Pruckas were entitled to nearly $450,000 and the Naths about $390,000 in attorneys' fees in the trial court, plus up to $60,000 each for an appeal, because they prevailed over Petrello's groundless claims. 42 U.S.C. § 3613(c)(2); *Myers v. City of Monroe*, 211 F.3d 289, 292-93 (5th Cir. 2000). Enormous as these sums seem, they are considerably less than Petrello himself or the appellees actually expended. The court did not abuse its discretion in its analysis or calculation of the fees according to governing Fifth Circuit law.

The judgment is **AFFIRMED**.[1]

---

[1] Other issues raised by Petrello lack merit; we need not reach appellees' cross-points.