# IN THE SUPREME COURT OF TEXAS

═══════════

No. 12-0620

═══════════

RAHUL K. NATH, M.D., PETITIONER,

v.

TEXAS CHILDREN'S HOSPITAL AND BAYLOR COLLEGE OF MEDICINE,
RESPONDENTS

═══════════════════════════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTEENTH DISTRICT OF TEXAS

═══════════════════════════════════════════════════════

**Argued February 5, 2014**

JUSTICE GUZMAN delivered the opinion of the Court in which CHIEF JUSTICE HECHT, JUSTICE JOHNSON, JUSTICE WILLETT, and JUSTICE DEVINE joined.

JUSTICE GREEN filed a dissenting opinion, in which JUSTICE LEHRMANN, JUSTICE BOYD, and JUSTICE BROWN joined.

In a civil suit, few areas of trial court discretion implicate a party's due process rights more directly than sanctions. This proceeding involves one of the highest reported monetary sanctions awards in Texas history stemming from baseless pleadings and one of the largest such awards in the United States.[1] Further, the award was levied against a party rather than an attorney. The Civil

---

[1] *See* Peter Vieth, *2013: The Year in Review*, VIRGINIA LAWYERS WEEKLY, Dec. 9, 2013 ($881,000 sanction award in a divorce proceeding was "the largest sanction ever imposed" in Virginia); Cheryl Millet, *Divorcee Slapped with Record-Setting $552K Sanction in Custody Case*, DAILY BUS. REV., Feb. 7, 2012 (discussing record setting sanctions award of $552,000 in a California divorce proceeding); Lisa Provence, *Unusual outcome: $722K in sanctions, juror judges judge*, THE HOOK, Nov. 4, 2011, *available at* www.readthehook.com/101759/final-order -plaintiffs

Practice and Remedies Code and our Rules of Civil Procedure allow for pleadings sanctions against parties and attorneys when, among other things, a pleading was filed with an improper purpose or was unlikely to receive evidentiary support. We have held that due process concerns impose additional layers of protection on sanctions awards by requiring, among other things, that the awards be just and not excessive.

In this suit between a physician and other medical providers, the trial court imposed sanctions against the physician well in excess of one million dollars for filing groundless pleadings in bad faith and with an improper purpose. We conclude the physician plaintiff's pleadings asserted time-barred claims and addressed matters wholly irrelevant to the lawsuit in an attempt to leverage a more favorable settlement, and therefore are sanctionable. But in assessing the amount of sanctions, the trial court failed to consider whether, by litigating for over four years before seeking sanctions, the defendants bore some responsibility for the attorney's fees they incurred. Accordingly, we reverse the court of appeals' judgment and remand to the trial court to reassess the amount of the sanctions award.

## I. Background

Dr. Rahul K. Nath is a plastic surgeon who was employed by Baylor College of Medicine and affiliated with Texas Children's Hospital (the Hospital). Nath reported to Dr. Saleh Shenaq, the Chief of Baylor College of Medicine's Division of Plastic Surgery, who also was Nath's partner at

---

-sanctioned-722k-juror-judges-judge ($542,000 sanction against counsel and $180,000 sanction against litigant was "one of the largest sanctions in Virginia legal history"); *Hunton & Williams and Wachovia Obtain Largest Sanctions Award by Tennessee Court*, BUS. WIRE NEWS RELEASES, Nov. 13, 2006, *available at* http://www.businesswire.com/news/home/20061113006140/en/Hunton-Williams-Wachovia-Obtain-Largest-Sanctions-Award#.U6Q_WPldX0s ($1.2 million sanction against litigant was the "largest sanctions award ever granted by a Tennessee court").

the Hospital's Obstetrical Brachial Plexus Clinic. Baylor received fifteen percent of the clinic's patient fees, and Nath and Shenaq evenly split the remainder of the fees.

Nath's relationship with his colleagues turned acrimonious in 2003, when several doctors complained that Nath billed excessively, performed unnecessary procedures, and treated fellow colleagues in an unprofessional manner. A letter from his faculty supervisors states that, "there have been several complaints pertaining to your billing practices, ethics, and professional conduct," and described his academic contributions as "minimal." For these reasons, the letter announced that Nath's faculty appointment would not be renewed, and his employment with Baylor was terminated effective June 30, 2004. Nath's former office manager also claimed Nath had a history of making racially-provocative statements and seemed to harbor delusions of grandeur.

Shortly after receiving the letter, Nath retained an attorney and notified Baylor that its employees were making statements "potentially damaging to Dr. Nath's reputation," allegedly in an effort to get Nath's patients to remain at the clinic. In 2006, Nath sued Shenaq, Baylor, and the Hospital. Nath and Shenaq settled two years later. Shenaq and another clinic doctor subsequently died and the clinic never reopened.

In his original pleading in 2006, Nath asserted claims for defamation and tortious interference with business relations against Baylor and the Hospital.[2] Nath's third amended petition added claims for negligent supervision and training predicated on the previously alleged facts. Nath's fourth amended petition added allegations that Shenaq had been operating on patients despite impaired vision. Similarly, Nath's fifth amended petition added that Shenaq had been operating on patients

---

[2] Nath subsequently sued Dr. Allan Belzberg and his employer, Johns Hopkins University, over an allegedly defamatory statement Belzberg made regarding Nath in Belzberg's capacity as a Johns Hopkins employee. After a battle over whether the trial court possessed personal jurisdiction over Belzberg and Johns Hopkins, Nath nonsuited them.

3

while afflicted with hepatitis. The fifth amended petition also included a declaratory judgment claim (that Nath could or should disclose to his patients that Shenaq was in poor health). The Hospital counterclaimed for attorney's fees pursuant to the declaratory judgment act, and in December 2009, moved for summary judgment on all of the claims in Nath's fifth amended petition. Baylor moved for summary judgment in January 2010. In response, Nath moved to compel additional depositions, extend the deadline to respond to the motions, and continue the summary judgment hearing—all of which the trial court granted. In March 2010, Nath again moved to continue the summary judgment hearing, which the trial court denied. Nath retained new counsel, Daniel Shea, who appeared at the hearing and filed a motion to recuse the judge. Nath also moved to recuse the judge assigned to hear the motion to recuse. Ultimately, the motions to recuse were denied.

Nath also filed a sixth amended petition in April 2010, in which he abandoned his defamation, tortious interference, negligence, and declaratory judgment claims and brought a claim for intentional infliction of emotional distress. The Hospital and Baylor moved for summary judgment on the new claim. Nath failed to respond to the motions and instead objected to the notice of hearing based on a technical defect. All parties appeared at a summary judgment hearing in June 2010, more than four years after the suit began, where the trial court dismissed Nath's claims.[3]

Two months later, the Hospital nonsuited its declaratory judgment counterclaim. The Hospital then moved to modify the judgment to assess attorney's fees as sanctions against Nath. Nath retained new counsel and filed special exceptions to the motion for sanctions in September. After a hearing on the special exceptions and the Hospital's sanctions motions, the trial court denied

---

[3] The trial court dismissed all the claims in Nath's fifth and sixth amended petitions, even though the sixth amended petition was Nath's only live pleading at the time of the hearing.

the special exceptions and granted the sanctions motion. The court issued findings of fact and conclusions of law indicating the sanctions were based on: (1) "Nath's improper purposes in filing the pleadings in this case;" (2) "the bad faith that his actions manifest;" and (3) "the lack of any factual predicate for his claims, as previously established by the Court's orders granting the motions for summary judgment." The court explained that its finding of bad faith stemmed from Nath's conduct in seeking information regarding Shenaq's health, conduct for which the court had previously admonished Nath.[4] Finally, the court concluded that Nath's leveraging of this information in an attempt to obtain a settlement constituted an improper purpose.

---

[4] At a hearing on a motion to compel in July 2009 where Nath sought production of information regarding the patients Shenaq had seen, the court responded:

> I can't do that. You can't do that. The State Medical Board could do that. Hospital Board, someone else. Somebody that's not here can do that. . . .
>
> You should be before some other board that has a different authority than me. It shouldn't be used as a tool in your litigation. . . .
>
> I'm wondering why you're asking me to uncover [Shenaq's alleged health issues and patients allegedly at risk] instead of the State Medical Board. That's my big issue with your approach. . . .
>
> You're coming to me asking me to blow open this cover. When there is an agency out there that is well situated to deal with all of the [privilege] issues that you are raising. . . .

At another hearing on a motion to compel in January 2010, the court stated:

> I think—I answered that by saying Dr. Shenaq's condition is not in this suit. . . .
>
> I think I was very clear about it last time. If I wasn't, I want to be clear now. . . .
>
> I said it's not relevant to this lawsuit. . . .
>
> It's irrelevant to your lawsuit so it's not your job to do it. Your doctor has an obligation to report it to his medical board and they have a job to do. We don't.

5

The trial court further found that Nath took "a personal, participatory role in this litigation." The court posited that Nath "is knowledgeable about the law and legal issues, having previously studied the law," for several semesters in the early 1980s in Canada. According to the trial court, Nath insisted on delaying the summary judgment hearing so he could be present at two depositions. Nath also filed an affidavit in response to the motion for summary judgment indicating he authorized the facts and theories set forth in the petitions. The court further found that Nath met with one deponent shortly before his deposition to discuss his testimony. And the trial court observed that "Nath has used the court system to intimidate adversaries and to stifle dissent with baseless legal allegations" by suing an alleged defamer, suing his former partner in a MRI business, suing two individuals associated with the Texas Medical Board (which later dismissed its proceedings against Nath), and asserting claims in federal court related to the sale of his home (on which he prevailed).[5] Ultimately, the trial court found that the Hospital's fees of $776,607 in defending the suit were reasonable and awarded them as sanctions.

Before the hearing on the Hospital's motion for sanctions, Nath moved to sever the claims as to Baylor, and after severance, Baylor also moved to modify the judgment to assess fees as sanctions. After a hearing on Baylor's sanctions motion in November 2010, the trial court made similar findings and awarded Baylor's $644,500.16 in attorney's fees as sanctions against Nath. The court of appeals affirmed the awards, and we granted Nath's petition for review. 375 S.W.3d 403, 415.

---

[5] Nath was defending a suit the Fifth Circuit ultimately determined to be groundless. *See Petrello v. Prucka*, 484 Fed. Appx. 939, 942–43 (5th Cir. 2012).

6

## II. Discussion

Nath primarily argues in this Court that the sanctions imposed against him as the client were not visited on the true offender and were excessive. The Hospital and Baylor counter that Nath had personal, active involvement in the litigation and that the fee award was appropriate given the circumstances. We agree with the Hospital and Baylor that the trial court properly sanctioned Nath because he pursued time-barred claims and irrelevant issues in order to leverage a more favorable settlement. But concerning the excessiveness of the award, the Hospital and Baylor waited almost four years into the litigation before moving for summary judgment on Nath's claims and only moved for sanctions after obtaining a final judgment. We previously advised courts to consider a variety of factors when imposing sanctions, including the degree to which the non-sanctioned parties' behavior caused their own expenses. The trial court failed to discuss this relevant factor, and we reverse and remand for it to do so.

### A. Standard of Review

We review the imposition of sanctions under an abuse of discretion standard. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007). Both Chapter 10 of the Texas Civil Practice and Remedies Code and Texas Rule of Civil Procedure 13 are applicable to this case, and sanctions imposed pursuant to both are reviewed under this abuse of discretion standard. *Id.* A sanctions award will not withstand appellate scrutiny if the trial court acted without reference to guiding rules and principles to such an extent that its ruling was arbitrary or unreasonable. *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004). A sanctions award that fails to comply with due process constitutes an abuse of discretion because a trial court has no discretion in determining what the law is or applying the

7

law to the facts. *See TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991); *Huie v. DeShazo*, 922 S.W.2d 920, 927 (Tex. 1996). But we will not hold that a trial court abused its discretion in levying sanctions if some evidence supports its decision. *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009). Generally, courts presume pleadings and other papers are filed in good faith. *GTE Commc'ns Sys. Corp. v. Tanner*, 856 S.W.2d 725, 730 (Tex. 1993). The party seeking sanctions bears the burden of overcoming this presumption of good faith. *Id.* at 731.

## B. Substantive Law Governing Sanctions

The sanction at issue here concerns pleadings, and its propriety is thus primarily governed by Chapter 10 of the Texas Civil Practice and Remedies Code and Texas Rule of Civil Procedure 13.[6] Chapter 10 allows sanctions for pleadings filed with an improper purpose or that lack legal or factual support. It provides that upon signing a pleading or motion, a signatory attests that:

> (1) the pleading or motion is not being presented for any improper purpose, including to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) each claim, defense, or other legal contention in the pleading or motion is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; [and]

---

[6] Chapter 9 of the Texas Civil Practice and Remedies Code also addresses frivolous pleadings and claims, but its application is limited to proceedings in which neither Rule 13 nor Chapter 10 applies. *See* TEX. CIV. PRAC. & REM. CODE § 9.012(h); *see also Low*, 221 S.W.3d at 614 (noting "Chapter 9 of the Texas Civil Practice and Remedies Code only applies in proceedings in which neither Rule 13 nor Chapter 10 applies"). Chapter 9 has largely been subsumed by subsequent revisions to the code. *See* Cynthia Nguyen, *An Ounce of Prevention is Worth a Pound of Cure?: Frivolous Litigation Diagnosis Under Texas Government Code Chapters 9 and 10, and Texas Rule of Civil Procedure 13*, 41 S. TEX. L. REV. 1061, 1083–84 (2000) (theorizing "it would be difficult to conceive of a scenario in which Chapter 9 would be applicable," and noting that "there are only a handful of cases that even cite Chapter 9, and these date from before the 1999 amendment to Section 9.012").

(3) each allegation or other factual contention in the pleading or motion has evidentiary support or, for a specifically identified allegation or factual contention, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

TEX. CIV. PRAC. & REM. CODE § 10.001.[7] Pleadings that violate these Chapter 10 requirements are sanctionable. *Id*. § 10.004(a). But a court may not sanction a represented party under section 10.001 for unfounded legal contentions. *Id.* § 10.004(d).

Rule 13 provides that pleadings that are groundless and in bad faith, intended to harass, or false when made are also sanctionable:

The signatures of attorneys or parties constitute a certificate by them that they have read the pleading, motion, or other paper; that to the best of their knowledge, information, and belief formed after reasonable inquiry the instrument is not groundless and brought in bad faith or groundless and brought for the purpose of harassment. Attorneys or parties who . . . make statements in pleading which they know to be groundless and false, for the purpose of securing a delay of the trial of the cause, shall be held guilty of a contempt . . . .

Courts shall presume that pleadings, motions, and other papers are filed in good faith. No sanctions under this rule may be imposed except for good cause, the particulars of which must be stated in the sanction order. "Groundless" for purposes of this rule means no basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law . . . .

TEX. R. CIV. P. 13. Importantly, Rule 13 does not permit sanctions on the issue of groundlessness alone. Rather, the filing in question must be groundless and also either brought in bad faith, brought for the purpose of harassment, or false when made. *Id*.

We have held that in order to safeguard constitutional due process rights, a sanction must be neither unjust nor excessive. We promulgated this standard most clearly in *TransAmerican*, 811

---

[7] Section 10.001 of the Civil Practice and Remedies Code is worded similarly to Federal Rule of Civil Procedure 11(b). *See Low*, 221 S.W.3d at 615.

9

S.W.2d at 913. The underlying case in *TransAmerican* was complex and multi-partied. *Id.* at 914. In brief, TransAmerican's president was sanctioned for discovery abuse pursuant to Rule of Civil Procedure 215 for failing to appear at a deposition. *Id.* at 915–16. In considering whether those sanctions complied with due process, we established a two-part test.

The first prong of the *TransAmerican* test concerns the relationship between the conduct evinced and the sanction imposed and requires a direct nexus between the offensive conduct, the offender, and the sanction award. *See id.* at 917. A just sanction must be directed against the abusive conduct with an eye toward remedying the prejudice caused to the innocent party, and the sanction must be visited upon the true offender. *Id.* A court must attempt to determine whether the offensive conduct is attributable to counsel only, to the party only, or to both. *Id.* Yet we warily noted in *TransAmerican* that apportioning blame between an attorney and a represented party "will not be an easy matter in many instances." *Id.* Such caution is warranted. The closeness that typically defines interaction between a litigant and his attorney not only binds their interests but may lend an overall opacity to the relationship that renders it difficult to determine where a party's input ends and where an attorney's counsel begins.

The second prong of the due process analysis under *TransAmerican* considers the proportionality of the punishment relative to the misconduct and warns "just sanctions must not be excessive." *Id.* Not only should a punishment (*i.e.*, sanctions) fit the crime (*i.e.*, the triggering offense), the sanction imposed should be no more severe than necessary to satisfy its legitimate purposes. *Id.* Legitimate purposes may include securing compliance with the relevant rules of civil

10

procedure, punishing violators, and deterring other litigants from similar misconduct. *Spohn Hosp. v. Mayer*, 104 S.W.3d 878, 882 (Tex. 2003).

We require courts to consider less stringent sanctions and weigh whether such lesser sanctions would serve to promote compliance. *TransAmerican*, 811 S.W.2d at 917.[8] Evidencing our reticence to wield the heavy hammer of sanctions, we have cautioned: "[c]ase determinative sanctions may be imposed in the first instance only in exceptional cases when they are clearly justified and it is fully apparent that no lesser sanctions would promote compliance with the rules." *Tanner*, 856 S.W.2d at 729.

Historically, awards for groundless pleadings in Texas have been moderate, at least in monetary terms. *See id.* at 730 (reversing a sanctions award of $150,000 in attorney's fees for groundlessness and discovery non-compliance); *Dike v. Peltier Chevrolet, Inc.*, 343 S.W.3d 179, 183 (Tex. App.—Texarkana 2011, no pet.) (reversing a groundless pleadings sanction of $15,353); *Parker v. Walton*, 233 S.W.3d 535, 538 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (reversing a groundless pleading sanction of $3,500 in attorney's fees); *Emmons v. Purser*, 973 S.W.2d 696, 699 (Tex. App.—Austin 1998, no pet.) (reversing a groundless pleadings sanctions award of $3,200); *see also Robson v. Gilbreath*, 267 S.W.3d 401, 405 (Tex. App.—Austin 2008, pet. denied) (affirming a groundless pleadings sanction of $10,000 for failure to conduct a reasonable inquiry).

---

[8] *See also Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 849 (Tex. 1992) (citing *TransAmerican* to note that "[a] permissible sanction should, therefore, be no more severe than required to satisfy legitimate purposes. This means that a court must consider relatively less stringent sanctions first to determine whether lesser sanctions will fully promote compliance, deterrence, and discourage further abuse").

11

While this tour d'horizon is not intended to be comprehensive, it is nonetheless representative of what our reported cases suggest have been typical groundless pleadings awards in this state.[9]

Though we specifically addressed sanctions stemming from a charge of discovery abuse in *TransAmerican*, we have previously held the due process requirements we established there apply to pleadings sanctions as well. *Low*, 221 S.W.3d at 619–20.

### C. Analysis

In the trial court, Nath brought claims for a declaratory judgment (regarding Shenaq's health), intentional infliction of emotional distress, defamation, tortious interference, and negligence. The trial court sanctioned Nath for (1) bad faith in his pursuit of discovery on the irrelevant issue of Shenaq's health; (2) an improper purpose of leveraging information concerning Shenaq's health to favorably settle a baseless claim; and (3) bringing claims that lacked a factual predicate. Chapter 10 requires that we analyze an improper purpose pleading-by-pleading, but we assess claim-by-claim whether a claim lacked a legal or factual basis.[10]

---

[9] Although imposed pursuant to the federal groundless pleadings rule, *see supra* note 7, federal pleadings sanctions may also provide a useful barometer to gauge the size of typical awards. *See generally* Maryann Jones, "*Stop, Think, & Investigate": Should California Adopt Federal Rule 11?*, 22 Sw. U. L. Rev. 337, 354 (1993) (noting that "[w]hile there are reported cases of awards exceeding $100,000, a recent comprehensive survey of Rule 11 sanctions in the Fifth, Seventh, and Ninth Circuits shows that the median sanction imposed pursuant to Rule 11 [at that time was] $2,500").

[10] *See* TEX. CIV. PRAC. & REM. CODE § 10.001 (providing that signing a pleading or motion certifies that "the pleading or motion is not being presented for any improper purpose, . . . each claim, defense, or other legal contention in the pleading or motion is warranted by existing law  . . . [and] each allegation or other factual contention in the pleading or motion has evidentiary support or, for a specifically identified allegation or factual contention, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery"); *see also Low*, 221 S.W.3d at 615 (recognizing that Chapter 10 requires analysis of each claim against each defendant).

12

## 1. Waiver

As an initial matter, we address the claim of the Hospital and Baylor that Nath waived his objection to the size of the sanctions award by failing to raise the issue of excessiveness at the trial court level. The court of appeals agreed, finding that the issue had not been properly preserved for review. 375 S.W.3d at 412. We disagree. The record plainly reveals Nath's objections to the award, including objections specifically predicated on the ground of excessiveness. On December 20, 2010, Nath filed a motion for new trial and a motion to modify the trial court's November judgment and sanctions order, arguing the sanctions award "violates the Excessive Fines clause of the Constitution of the United States of America—Eighth Amendment—and the Excessive Fines clause of the Texas Constitution—Article I, section 13." Additionally, Nath cited United States Supreme Court precedent to bolster his contention that the trial court should consider "whether the penalties in question were excessive."[11] We are generally loath to turn away a meritorious claim due to waiver; where the party has clearly and timely registered its objection, we find a waiver argument particularly unavailing. *See Verburgt v. Dorner*, 959 S.W.2d 615, 616–17 (Tex. 1997). We conclude Nath did not waive his objection to the excessiveness of the sanctions award.

## 2. Nath's Fourth, Fifth, and Sixth Amended Petitions

Central to its ultimate imposition of sanctions, the trial court found that Nath's pursuit of information relating to Shenaq's health was in bad faith, and that Nath's ostensible intent to use that information to leverage a favorable settlement for a baseless claim constituted an improper purpose.

---

[11] *Austin v. United States*, 509 U.S. 602, 622 (1993).

Nath originally included allegations relating to Shenaq's health in his fourth amended petition, filed in November 2008.[12] Nath moved to compel discovery relating to Shenaq's health and in July 2009 filed a fifth amended petition that included a request for declaratory judgment relating to Shenaq's health. The trial court admonished Nath's counsel that the information was irrelevant to his lawsuit. *See supra* note 4. Nath later filed a sixth amended petition that abandoned his prior claims and added a claim for intentional infliction of emotional distress. But that petition retained allegations regarding Shenaq's health.[13] For the reasons explained below, we agree with the court of appeals that the trial court properly found Nath's pleadings sanctionable.

The hallmarks of due process for sanctions awards are that they be just and not excessive. *TransAmerican*, 811 S.W.2d at 917. Sanctioning Nath for pleadings relating to Shenaq's health was demonstrably just. First, there was a direct nexus between this portion of the trial court's sanctions and the offensive conduct. The trial court found such pleadings to be in bad faith (due to their irrelevance) and filed for an improper purpose (leveraging a settlement). The trial court's finding is supported by some evidence and is therefore not an abuse of discretion. *See Unifund*, 299 S.W.3d

---

[12] For example, the fourth amended petition claimed:

Defendants were further motivated to discredit Dr. Nath, damage his reputation, and remove him from their facilities because Dr. Nath had discovered that Dr. Shenaq had become partially or completely blind in one eye after suffering a detached retina in 2003. . . . On information and belief, Defendants sought to protect their own interests when they failed to inform Dr. Shenaq's patients about Dr. Shenaq's compromised medical condition. . . . Drs. Grossman and Brunicardi, along with Baylor and [the Hospital], knew that Dr. Nath was concerned about, and was knowledgeable of, Dr. Shenaq's condition and were fearful that Dr. Nath would make Dr. Shenaq's condition public.

[13] For example, the sixth amended petition alleged "that many patients were operated on or treated by Dr. Shenaq at Baylor and [the Hospital] after Dr. Shenaq had become partially or completely blind in one eye after suffering a detached retina in November 2003 . . . ."

14

at 97. Nath admittedly was seeking information relating to Shenaq's health so he could disclose it to Shenaq's patients. But such disclosures would not be relevant to triable issues related to Nath's then-contemporaneous claims for defamation, tortious interference, and negligence.

Moreover, there was some evidence supporting the trial court's determination that Nath was improperly seeking irrelevant information to leverage a favorable settlement. On the eve of a mediation in June 2009, Nath's counsel sent a letter to the Hospital indicating Nath was anxious to conduct discovery regarding Shenaq's health conditions, the results of which "would most certainly require prompt actions to notify patients so that they can undergo immediate testing and obtain legal counsel to advise them of their rights." During Nath's deposition, attorneys for Baylor and the Hospital likened Nath's use of legal process in this manner to extortion. The trial court agreed with this assessment, characterizing Nath's conduct in seeking information related to Shenaq's health as "an abuse of process" and "a form of extortion." Accordingly, the improper purpose of Nath's pleadings regarding Shenaq's health indicates the trial court appropriately levied sanctions regarding this conduct.[14]

In addition to considerations described, the just-award prong of the due process analysis also examines whether the sanction was visited on the true offender. The trial court made various findings of fact regarding Nath's direct involvement in the case, particularly noting his effort to seek information relating to Shenaq's health, and the record supports these findings. Relations between Nath and Shenaq deteriorated to the point of acrimony in the time leading up to Nath's departure

---

[14] While bad faith must be coupled with groundless pleadings to support sanctions under Rule 13, TEX. R. CIV. P. 13, an improper purpose alone is a sufficient predicate for sanctions under Chapter 10, TEX. CIV. PRAC. & REM. CODE § 10.001; *see Low*, 221 S.W.3d at 617 (discussing the disjunctive nature of Chapter 10's bases for sanctions).

from Baylor, and they only worsened as litigation ensued. The affidavit Nath filed in response to the motions for summary judgment claimed the relationship between Nath and Shenaq grew tense when Nath confronted Shenaq for performing surgery with allegedly impaired vision. And Nath, by his own admission, specifically sought information related to Shenaq's health so that he could inform former patients of Shenaq's health problems. Nath's affidavit also lists forty-five patient surgeries Shenaq performed with allegedly impaired vision. Further, Nath personally attended two depositions of Shenaq's colleagues where his counsel asked questions concerning Shenaq's health. Ultimately, Nath's conduct surrounding Shenaq's health appears to be less about pursuing a legal redress for an injury (the province of the attorney) and more about seeking irrelevant personal information (an extrajudicial desire of the client). While litigation is contentious by definition and often utilized to compel a desired end, we agree with the trial court that, on these facts, using a legal mechanism to force damaging, irrelevant information into the public domain and thereby compel a more favorable settlement constitutes an improper purpose. Against this backdrop and the logical inferences that flow from it, we cannot say the trial court abused its discretion by imposing the sanction against Nath personally.

Nath claims that even if some of the sanctions against him were proper, sanctions against him for the sixth amended petition were improper because the lawyer who drafted that petition swore in an affidavit that Nath had no involvement with the claim in that petition. Specifically, the attorney indicated he "exercised [his] own legal judgment" when deciding what claims to file in the sixth amended petition and asserted that Nath "had no involvement in the selection of what pleadings and motions were filed in this case." Nonetheless, the sixth amended petition contains facts regarding

16

Shenaq's health from the prior petitions, and we have already determined that information likely came from Nath himself. In addition, Nath almost certainly knew of the inclusion of those allegations in the sixth amended petition because his attorney "kept Dr. Nath reasonably informed"—as was his professional obligation.[15] Accordingly, we reject Nath's argument and conclude the trial court did not abuse its discretion in labeling Nath the true offender, insofar as the sixth amended petition continued to make issue of Shenaq's health.

We note, however, that while Nath may be properly deemed the true offender, his attorneys possess ethical obligations and may share in the blame for sanctionable conduct. An attorney has ethical obligations to both his client and to the judicial system as an officer of the court.[16] Though zealous advocacy is expected of an attorney—indeed, it is a professional obligation—the attorney must not permit client desires to supersede the attorney's obligation to maintain confidence in our judicial system.[17] As our rules of professional conduct unambiguously require: "A lawyer should use the law's procedures only for legitimate purposes and not to harass or intimidate others."[18] Further, these rules of conduct require an attorney to "maintain the highest standards of ethical conduct" throughout representation.[19] Regardless, Baylor and the Hospital only moved to sanction

---

[15] An attorney owes a client a duty to inform the client of matters material to the representation, provided such matters are within the scope of representation. *See, e.g.*, *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 160 (Tex. 2004).

[16] TEX. DISCIPLINARY R. OF PROF'L CONDUCT pmbl. ¶ 1.

[17] *Id.* at ¶ 2.

[18] *Id.* at ¶ 4.

[19] *Id.* at ¶ 1.

17

Nath—not his lawyers—and the trial court declined to sanction the lawyers sua sponte.[20] Thus, under the true-offender inquiry, we must uphold the trial court's decision to sanction Nath personally because some evidence supports the sanction. *See Unifund*, 299 S.W.3d at 97.

We are mindful of course that due process analysis for sanctions must encompass analyzing whether the award was excessive. But we will refrain from engaging in this analysis until we have examined all pleadings and claims for which Nath may appropriately be sanctioned.

### 3. Defamation

Nath's initial petitions included claims for defamation, tortious interference, and negligence. We address them in turn. The trial court made discrete findings as to Nath's defamation claim. Specifically, the trial court found the defamation claim was time-barred by a one-year statute of limitations[21] and that some of the statements Nath claimed were defamatory were not actually defamatory.[22] But Chapter 10 expressly disallows sanctions against a party for improper legal contentions when the party is represented by counsel. Tex. Civ. Prac. & Rem. Code § 10.004(d). The trial court did not find that the statements did not occur. Rather, it sanctioned Nath because of legal impediments to recovering for the alleged statements.[23] Thus, Chapter 10 precluded the trial

---

[20] *See* Tex. Civ. Prac. & Rem. Code § 10.002 (providing that court may sanction a party or attorney under Chapter 10 "on its own initiative"); Tex. R. Civ. P. 13 (providing that court may sanction a party or attorney under Rule 13 "upon its own initiative").

[21] Tex. Civ. Prac. & Rem. Code § 16.002(a).

[22] "[A] defamatory statement is one that tends to injure a person's reputation." *Hancock v. Variyam*, 400 S.W.3d 59, 62 (Tex. 2013).

[23] *Cf. Dolenz v. Boundy*, 197 S.W.3d 416, 421–22 (Tex. App.—Dallas 2006, pet. denied) (affirming pleadings sanctions of $250 against a party when the party was a lawyer proceeding pro se and presumably aware that the claims were time-barred).

18

court from sanctioning Nath for groundlessness based upon improper legal contentions when he was represented by counsel.

However, the trial court also held that the time-barred status and nondefamatory nature of some of the statements in his defamation claim indicated Nath filed the claim in bad faith and for an improper purpose. Defamation claims are subject to a one-year limitations period, and Nath filed suit in February 2006. The trial court found that most of the allegedly defamatory statements occurred in June or July of 2004, and none occurred after the end of 2004, when the Hospital closed the clinic. Nath's affidavit opposing summary judgment detailed the allegedly defamatory statements and claimed they damaged his medical practice and caused him financial harm. Further, Nath's affidavit admits he learned of eight of these allegedly defamatory statements in 2004—over one year before he filed suit.[24] As previously addressed, this matter involves legal contentions—which Chapter 10 does not allow Nath to be sanctioned for on the basis of legally groundless pleadings because he was represented by counsel. *Id*. But Chapter 10 offers no similar stricture for sanctions based on improper purpose. And in any event, Nath was represented by counsel no later than June 8, 2004, when he claimed the statements were "potentially damaging to [his] reputation." Because there is some evidence supporting the finding that Nath brought his defamation claim with an improper purpose, the trial court did not abuse its discretion in sanctioning Nath for this claim.

---

[24] For example, on or about June 2, 2004, Nath learned his appointment at Baylor was not renewed because of his billing practices and minimal academic contributions. Nath's affidavit also indicates he learned of seven other allegedly defamatory statements in 2004.

Nath nonetheless argues such sanctions violate the constitutional requirement that the sanction be visited on the true offender. We disagree. The fact that Chapter 10 does not shelter parties from sanctions for flawed legal contentions that demonstrate an improper purpose is simply a reflection of our warning in *TransAmerican* that the attorney-client relationship is opaque by default. Nath only diminished that opacity for his sixth amended petition, which contained a claim for intentional infliction of emotional distress. The attorney who filed that claim indicated Nath had no involvement in drafting the claim. But Nath presented no similar evidence with respect to the pleadings containing Nath's defamation claim. Accordingly, because some evidence supports the trial court's finding, and no evidence clarifies the respective roles of Nath and his attorneys in regards to his defamation claim, we conclude the trial court did not abuse its discretion in sanctioning Nath for that claim.

### 4. Tortious Interference

Nath's remaining claims are for tortious interference and negligence. The trial court did not find that Nath filed his tortious interference claim in bad faith or for an improper purpose. Rather, the trial court generally found Nath's claims to be sanctionable because they lacked merit, as evidenced by the court's summary judgment dismissal. The trial court also found Nath's claim to be groundless to the extent it relied on time-barred defamatory statements. As explained below, the trial court's first rationale violates the Legislature's directive in Chapter 10, but some evidence supports its second rationale.

Generally, groundless pleadings are sanctionable under either Rule 13 or Chapter 10. Under Rule 13, groundlessness in and of itself is an insufficient basis for sanctions. A pleading must also

20

be in bad faith, intended to harass, or knowingly false to justify sanctions. TEX. R. CIV. P. 13.[25] The trial court made no findings of bad faith, improper purpose, or falsity regarding the tortious interference claim. Accordingly, Rule 13 cannot support the sanctions as to this claim.

However, Chapter 10 provides that a claim that lacks a legal or factual basis—without more—is sanctionable. TEX. CIV. PRAC. & REM. CODE § 10.001; *see also Low*, 221 S.W.3d at 617. Legally, the claim must be warranted by existing law or a nonfrivolous argument to change existing law. TEX. CIV. PRAC. & REM. CODE § 10.001(2). But Chapter 10 expressly prohibits monetary sanctions against a represented party based on the legal contentions in a pleading. *Id*. § 10.004(d) ("The court may not award monetary sanctions against a represented party for a violation of Section 10.001(2)."). Accordingly, the trial court could not have properly awarded sanctions against Nath for groundless legal contentions in his tortious interference claim.

Chapter 10 requires that each factual contention must have evidentiary support or be likely to receive it after a reasonable opportunity for discovery. *Id*. § 10.001(3); *Low*, 221 S.W.3d at 616–17. We held in *Low* that a pleading was sanctionable because it alleged two doctors prescribed a drug that medical records in the attorney's possession demonstrated they did not prescribe. 221 S.W.3d at 616. Thus, in holding the pleading was sanctionable, we held that the allegations did not have, and were not likely to subsequently receive, evidentiary support in light of the evidence the attorney possessed when filing the claim. *Id*.

---

[25] *See also Able Supply Co. v. Moye*, 898 S.W.2d 766, 772 (Tex. 1995).

Unlike in *Low*, the trial court's findings here only indicate it viewed the pleadings as groundless as of the time it granted summary judgment. But the court's findings miss the mark, as the vantage point for assessing evidentiary support is at the time the pleading is filed.[26] Establishing a vantage point at the time of a merits adjudication four years or more into a proceeding would unnecessarily chill litigation in cases where claimants in good faith believe they possess a claim, but have not yet discovered sufficient evidence on every essential element of their claim. We cannot endorse a view that runs so contrary to the Legislature's chosen words in Chapter 10 and our construction of them.

Nonetheless, a distinction between sanctions for groundless pleadings and sanctions for discovery abuse is worth noting. A claim may be likely to receive evidentiary support when filed and thus not be groundless under Chapter 10. But if a party later learns through discovery that no factual support for the contention exists and still pursues litigation, such conduct might be sanctionable. But the sanctionable conduct would likely be the abuse of the discovery process, not the filing of pleadings, as our rules of civil procedure specify that a court may sanction a party or counsel if the court "finds that any interrogatory or request for inspection or production is unreasonably frivolous, oppressive, or harassing." TEX. R. CIV. P. 215.3. While the ultimate penalty

---

[26] For example, Chapter 10 specifies that anyone signing a pleading certifies that each allegation "has evidentiary support or . . . is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." TEX. CIV. PRAC. & REM. CODE § 10.001(3). Likewise, the trial court's sanctions order in *Low* indicated that the factual contentions "did not, on January 31, 2002 [when the petition was filed], and do not now, have evidentiary support; nor were they on January 31, 2002, likely to have evidentiary support after a reasonable opportunity for further investigation." 221 S.W.3d at 617.

22

may be similar in its effect on the sanctioned party, its application is predicated on a different ground.[27]

But in addition to concluding that Nath's claims ultimately lacked merit, the trial court also specifically noted in a footnote in its findings of fact and conclusions of law that "Nath's claims of negligence and tortious interference are also groundless to the extent that those claims rely on time-barred, allegedly defamatory statements." Defamation is subject to a one-year statute of limitations, TEX. CIV. PRAC. & REM. CODE § 16.002(a), while tortious interference is subject to at least a two-year statute of limitations, *First Nat'l Bank of Eagle Pass v. Levine*, 721 S.W.2d 287, 289 (Tex. 1986). However, the Fifth Circuit and several Texas courts of appeals have held that, when the sole basis for a tortious interference claim is defamatory statements, the one-year statute of limitations for defamation applies.[28] Likewise, we have applied a one-year statute of limitations to business disparagement claims when the gravamen of the complaint is defamatory injury to reputation and there is no evidence of special damages. *See Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 766 (Tex. 1987). We now similarly conclude that if a tortious interference claim is based solely on defamatory statements, the one-year limitations period for defamation claims applies.

Nath's tortious interference claim was predicated solely on the allegedly defamatory

---

[27] This analysis need not detain us here. Nath engaged in questionable discovery conduct surrounding the original setting for the summary judgment motions. But even if this conduct was sanctionable as discovery abuse, it occurred during a time when Nath's fourth, fifth, and sixth amended petitions were on file—which we have found to be sanctionable pleadings. Thus, we need not assess whether such conduct was sanctionable for a second reason. And in any event, the Hospital and Baylor did not move for discovery sanctions.

[28] *See Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 146–47 (5th Cir. 2007); *Williamson v. New Times, Inc.*, 980 S.W.2d 706, 710–11 (Tex. App.—Fort Worth 1998, no pet.); *Martinez v. Hardy*, 864 S.W.2d 767, 776 (Tex. App.—Houston [14th Dist.] 1993, no writ); *Gulf Atl. Life Ins. Co. v. Hurlbut*, 696 S.W.2d 83, 97–98 (Tex. App.—Dallas 1985), *rev'd on other grounds*, 749 S.W.2d 762 (Tex. 1987).

statement because it alleges the Hospital and Baylor tortiously interfered "by continuing to make false statements regarding" Dr. Nath to third parties. Accordingly, Nath's tortious interference claim was subject to the one-year statute of limitations. The trial court correctly found the earliest of the allegedly defamatory statements occurred in June 2004. Nath filed his tortious interference claim in February 2006, after the one-year limitations period had run. Thus, some evidence supports the trial court's finding that Nath's tortious interference claim (as with his defamation claim) was time-barred and demonstrated an improper purpose.

### 5. Negligence

Nath's final claim was for negligence, in which Nath claimed that Baylor and the Hospital's negligent training and supervision of its employees led them to defame him and tortiously interfere with his practice. As with Nath's tortious interference claim, the trial court (1) generally found Nath's claims to be sanctionable because they lacked merit due to their dismissal at summary judgment, and (2) specifically found the negligence claim to be groundless to the extent it relied on time-barred defamatory statements. As explained above, assessing groundlessness only at the time of a merits dismissal over four years into the litigation contravenes the requirement in Chapter 10 that groundlessness is assessed as of the time of filing. Thus, the trial court's first rationale cannot support sanctions as to the negligence claim.

But the trial court's second rationale—that the negligence claim relied on time-barred statements—is a sufficient basis for sanctions. Nath filed his negligence claim in his third amended petition in September 2008, over four years after learning of the first allegedly defamatory statements in June 2004. Regardless of whether the two-year limitations window for negligence claims was

24

truncated to one year because Nath's claim was predicated solely on defamatory statements (as with the tortious interference claim), limitations barred the negligence claim. For the same reason sanctions are appropriate for Nath's defamation and tortious interference claims, they are appropriate for his negligence claim.

## D. Remand

In short, all of Nath's petitions are sanctionable. But we must still assess whether the amount of the award was excessive. A trial court abuses its discretion by failing to adhere to guiding rules and principles. *Cire*, 134 S.W.3d at 838–39. We set forth these guiding rules and principles for assessing the amount of pleadings sanctions in *Low*.[29] 221 S.W.3d at 620 n.5. This nonexclusive

---

[29] The list of nonexclusive factors we enumerated was:

a.   the good faith or bad faith of the offender;

b.   the degree of willfulness, vindictiveness, negligence, or frivolousness involved in the offense;

c.   the knowledge, experience, and expertise of the offender;

d.   any prior history of sanctionable conduct on the part of the offender;

e.   the reasonableness and necessity of the out-of-pocket expenses incurred by the offended person as a result of the misconduct;

f.   the nature and extent of prejudice, apart from out-of-pocket expenses, suffered by the offended person as a result of the misconduct;

g.   the relative culpability of client and counsel, and the impact on their privileged relationship of an inquiry into that area;

h.   the risk of chilling the specific type of litigation involved;

i.   the impact of the sanction on the offender, including the offender's ability to pay a monetary sanction;

j.   the impact of the sanction on the offended party, including the offended person's need for compensation;

list of factors is helpful in guiding the often intangible process of determining a penalty for sanctionable behavior, and it provides context for our review of the trial court's award. We advised in *Low* that "[a]lthough we do not require a trial court to address all of the factors . . . to explain the basis of a monetary sanction . . . it *should consider relevant factors* in assessing the amount of the sanction." *Id*. at 620–21 (emphasis added). In practice, this means that when a factor is relevant to a party being sanctioned, that factor must inform the issuance of the award. To take just one example, one factor we referenced in *Low* is "any prior history of sanctionable conduct on the part of the offender." *Id*. at 620 n.5. A court obviously need not consider prior sanctionable conduct in calibrating a sanction award for a first-time litigant for the self-evident reason that no such conduct exists. Yet, were the example reversed and a sanctioned litigant possessed a lengthy history of prior sanctions, the court "should consider" that party's checkered history in levying a sanction. *Id*. at 620–21 & 620 n.5.

Here, the trial court cited and then considered nearly all of the relevant *Low* factors. In the context of this matter, however, one factor made relevant by the protracted nature of this litigation

---

k.       the relative magnitude of sanction necessary to achieve the goal or goals of the sanction;

l.       burdens on the court system attributable to the misconduct, including consumption of judicial time and incurrence of juror fees and other court costs;

. . . .

n.      the degree to which the offended person's own behavior caused the expenses for which recovery is sought.

*Low*, 221 S.W.3d at 620 n.5 (quoting AMERICAN BAR ASSOCIATION, STANDARDS AND GUIDELINES FOR PRACTICE UNDER RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE, *reprinted in* 121 F.R.D. 101, 104 (1988) (omission in original)).

is "the degree to which the offended person's own behavior caused the expenses for which recovery is sought." *Id*. at 620 n.5 (quotation marks omitted). The trial court failed to address this factor, though it is unquestionably relevant. The statements Nath addressed in his original petition were made in 2004, and Nath filed suit well after the one-year limitations period had run. Yet, the record indicates that all three parties litigated a host of merits issues for nearly a half-decade before the Hospital and Baylor moved for summary judgment on such grounds as limitations. Thus, while Nath was the initiator of this litigation, the degree to which the Hospital and Baylor caused their attorney's fees is a relevant inquiry.

A party is entitled to thoroughly and vigorously litigate a matter. But if issues asserted in pleadings are revealed to be frivolous, and the defending party delays moving for summary judgment and sanctions, the defending party adopts some responsibility for the overall increase in litigation costs. Of course, placing the entire cost of litigation on a plaintiff may be proper and deserved if the plaintiff was the party responsible for sustaining frivolous litigation over a prolonged period. Here, the trial court found the defamation claims were friviolous ab initio because the statements were alleged to have been made at least one year before suit was filed. Moreover, the time-barred statements permeated subsequent pleadings. The defendants, however, did not file a summary judgment for years after the allegations were first made. A defending party cannot arbitrarily shift the entirety of its costs on its adversary simply because it ultimately prevails on a motion for

27

sanctions. Because the trial court did not discernibly examine this relevant *Low* factor, we remand for it to do so.[30]

### E. Response to the Dissent

The dissent tacitly agrees with our analysis, but would affirm the sanctions award rather than remand for the trial court to assess the relevant *Low* factor. Specifically, the dissent argues that we should outright affirm the award of sanctions because, among other things: (1) the findings of fact and conclusions of law contained a typographical error, and (2) our direction that trial courts "should" consider the relevant *Low* factors is permissive.

The dissent first contends the trial court made a typographical error in stating that it considered the extent to which Nath caused the Hospital and Baylor's fees. But viewing the findings and conclusions as a whole belies the dissent's position. The trial court was careful to detail its rationale for the *Low* factors it found to be relevant—except the extent to which the Hospital and Baylor caused their own injuries. For example, the findings and conclusions spent considerable time discussing Nath's bad faith, his degree of willfulness, and his knowledge and expertise. When a trial court recites a relevant issue but fails to discuss it, we cannot automatically conclude that such cursory mention is tantamount to compliance. This was true in the case of the $50,000 sanction we reversed in *Low*, and it is equally as true of the $1.4 million sanction presented here.

Additionally, the dissent contends that our admonishment that trial courts "should" consider the relevant *Low* factors is permissive. Notably, the dissent does not contend the extent to which the

---

[30] We are confident in the trial court's ability to resolve this discrete issue on remand either on the existing record or, at most, after a hearing examining briefing accompanied by affidavits regarding the degree to which the Hospital and Baylor caused their attorney's fees.

Hospital and Baylor caused their attorney's fees is irrelevant. And regardless of whether consideration of the relevant *Low* factors is permissive, the trial court went to great lengths to examine all the relevant *Low* factors except for the extent to which the non-sanctioned parties caused their own injuries. We do not believe the standard of review allows a trial court that dutifully considers almost all of the relevant *Low* factors to essentially ignore a relevant factor. As noted, failure to adhere to guiding rules and principles constitutes an abuse of discretion. *Cire*, 134 S.W.3d at 838–39. *Low* offered these guiding rules and principles, the trial court failed to adhere to them, and this amounted to an abuse of discretion.

### III. Conclusion

Due process requires that sanctions be just, meaning that there be a direct nexus between the sanction and the sanctionable conduct, and be visited on the true offender. Here, the trial court's sanctions award complied with these requirements because Nath's petitions were filed for the improper purpose of pursuing an unrelated issue and advancing time-barred claims. However, when assessing the amount of sanctions, the trial court failed to examine the extent to which the Hospital and Baylor caused the expenses they accrued in litigating a variety of issues over several years. Accordingly, we remand for the trial court to reassess the amount of the sanctions award while considering the omitted factor. *See Low*, 221 S.W.3d at 622.

_____
Eva M. Guzman
Justice

**OPINION DELIVERED:** August 29, 2014

29