**Affirmed and Memorandum Opinion filed November 15, 2016.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-15-00364-CV

_____

## RAHUL K. NATH, M.D., Appellant

## V.

## TEXAS CHILDREN'S HOSPITAL & BAYLOR COLLEGE OF MEDICINE, Appellees.

**On Appeal from the 215th District Court
Harris County, Texas
Trial Court Cause No. 2006-10826**

## M E M O R A N D U M   O P I N I O N

For the second time we review the trial court's award of $1.37 million in sanctions against Dr. Rahul Nath in favor of Texas Children's Hospital (TCH) and Baylor College of Medicine (Baylor). In the first appeal, we held that the trial court did not abuse its discretion in awarding sanctions against Nath because sufficient evidence supported the trial court's findings of bad faith and improper purpose by Nath in filing certain pleadings. On petition for review, the Texas Supreme Court

agreed the trial court did not abuse its discretion in finding Nath filed the pleadings in bad faith and for an improper purpose, but reversed our decision and remanded to the trial court to consider one discrete issue: the degree to which TCH's and Baylor's own behavior caused the expenses for which recovery is sought, under *Low v. Henry*, 221 S.W.3d 609, 620 n.5 (Tex. 2007). On remand, the trial court held a hearing and determined that neither TCH's nor Baylor's own behavior caused the expenses for which recovery was sought and again imposed the sanctions. Nath again appeals the trial court's judgment imposing sanctions, primarily asserting procedural challenges to the hearing and evidence submitted on remand. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A detailed statement of the factual background is contained in our prior opinion[1] and in the Texas Supreme Court's opinion, *Nath v. Texas Children's Hosp.*, 446 S.W.3d 355, 359-61 (Tex. 2014). We set out here only the facts relevant to the appeal on remand.

### A. *The underlying litigation and initial sanctions awards*.

Nath is a plastic surgeon who was employed by Baylor and affiliated with TCH. After Nath's relationship with his colleagues deteriorated in 2003, Baylor terminated Nath's employment effective June 30, 2004. On February 17, 2006, Nath filed suit against TCH, Baylor, and his former supervisor and business

---

[1] Our prior opinion involved the consolidated appeal of No. 14-11-00034-CV and 14-11-00127-CV. *Nath v. Texas Children's Hosp.*, 375 S.W.3d 403 (Tex. App.—Houston [14th Dist.] 2012), *rev'd*, 446 S.W.3d 355 (Tex. 2014). The consolidated appeal addressed the separate judgments awarded in favor of TCH and Baylor against Nath in Cause Nos. 2006-10826 and 2006-10826-A. In the instant appeal, Nath requests, and TCH and Baylor do not oppose, that we take judicial notice of the full record on file in this Court's decision in the consolidated appeal of the two causes. We will do so. *See Trevino v. Pemberton*, 918 S.W.2d 102, 103 n.2 (Tex. App.—Amarillo 1996, orig. proceeding).

2

partner Dr. Saleh Shenaq, asserting claims for defamation and tortious interference.

Approximately two months later, in April 2006, Nath filed a First Amended Petition naming Johns Hopkins University and one of its employees as additional defendants, based on alleged defamatory statements made by the employee. A jurisdictional battle ensued over whether the Texas court could exercise personal jurisdiction over Johns Hopkins and the employee. TCH and Baylor state in their brief, and Nath does not dispute, that during the jurisdictional appeal the parties entered into a voluntary stay of the trial court proceedings. The jurisdictional dispute ended in September 2008 when Nath non-suited Johns Hopkins and the employee in his Third Amended Petition. The Third Amended Petition also added new claims against TCH and Baylor for negligent supervision and training based on the same facts previously stated in the prior petitions.

In November 2008, Nath filed a Fourth Amended Petition in which he added factual allegations that Dr. Shenaq[2] had been operating on patients while he had impaired vision. From November 2008 to July 2009, the parties engaged in numerous discovery disputes and a failed mediation attempt. In July 2009, Nath again amended his petition to seek declaratory relief based on the alleged health problems of Dr. Shenaq. Five months later, in December 2009, TCH filed traditional and no-evidence motions for summary judgment with respect to all claims in Nath's petition. In January 2010, Baylor also filed traditional and no-evidence motions for summary judgment covering all of Nath's claims.

Over the next six months, Nath filed motions that delayed the submission of TCH and Baylor's motions for summary judgment. Nath moved to compel additional depositions, requested more time to respond to the motions for summary

---

[2] By this time, Nath and Dr. Shenaq had settled their claims and Dr. Shenaq had passed away.

judgment, and sought continuances of the summary judgment hearing, all of which the trial court granted. On the day the motions for summary judgment were to be heard, Nath filed a motion to recuse the judge. Nath then filed a motion to recuse the judge assigned to hear the motion to recuse. The recusal motions were denied. Nath also filed another amended petition, in which he abandoned all previous claims that were the subject of the motions for summary judgment and asserted a new claim for intentional infliction of emotional distress.

In May 2010, TCH and Baylor filed a new round of motions for summary judgment to address the newly asserted claim for intentional infliction of emotional distress. In June 2010, over four years after the litigation began, the trial court heard and considered the traditional and no-evidence summary judgment motions. The trial court granted summary judgment in favor of TCH and Baylor on Nath's claims.

TCH and Baylor then sought sanctions against Nath under Texas Rule of Civil Procedure 13 and Chapter 10 of the Texas Civil Practice and Remedies Code. The trial court held hearings on the motions for sanctions and issued sanctions based on, among other things: (1) "Nath's improper purposes in filing the pleadings in this case;" (2) "the bad faith that his actions manifest;" and (3) "the lack of any factual predicate for his claims, as previously established by the Court's orders granting the motions for summary judgment." *Nath*, 446 S.W.3d at 360. The trial court sanctioned Nath in the amount of $726,000 in favor of TCH, representing a portion of TCH's reasonable fees in defending the suit, and in the amount of $644,500.16 in favor of Baylor, representing a portion of Baylor's reasonable fees defending the suit. *Id.* The trial court filed extensive findings of fact and conclusions of law supporting the sanctions orders. This court affirmed the trial court's sanctions awards and Nath then appealed to the Texas Supreme Court.

4

The Texas Supreme Court agreed that Nath's conduct and his pleadings warranted sanctions. *Id.* at 371. The Court, however, found that in determining the amount of sanctions, the trial court failed to address one factor stated in the decision of *Low v. Henry*, 221 S.W.3d 609 (Tex. 2007). *Id.* at 372. The omitted factor was "the degree to which the offended person's own behavior caused the expenses for which recovery is sought." *Id.* (citing *Low*, 221 S.W.3d at 620 n.5) (referenced as *Low* factor (n)). The Court found this factor "unquestionably relevant" because the litigation had been pending for over four years at the time summary judgment was granted, and the summary judgment was based primarily on limitations grounds that were ostensibly evident from the initial pleading. *See id.* The case was thus remanded to the trial court to "reassess the amount of the sanctions award while considering the omitted factor." *Id.* at 373.

**B.** *The litigation after remand and the second sanctions award.*

Upon remand to the trial court, the parties began filing motions. On December 24, 2014, Nath filed motions to disqualify TCH's and Baylor's counsel, arguing that counsel was now a material witness in the case and barred by the disciplinary rules from continuing the representation. Nath did not set the motions to disqualify for hearing.

On January 2, 2015, TCH and Baylor filed separate motions to reassess sanctions and requested supplemental findings of fact and conclusions of law addressing *Low* factor (n), cited by the Texas Supreme Court. TCH and Baylor attached to their motions to reassess supplemental declarations and affidavits from their respective lead trial counsel, Patrick W. Mizell and Shauna Clark. TCH and Baylor set the motions to reassess sanctions for hearing on January 16, 2015.

Also on January 2, 2015, Nath's counsel informally requested the deposition of either Mizell or Clark and the production of the billing and related records relied

5

upon by them in their supplemental declaration and affidavit. On January 5, 2015, counsel for TCH and Baylor declined the request. No formal notices of deposition or document requests were issued, and Nath did not file a motion to compel the discovery sought. Nor did Nath file any response to the motions to reassess sanctions.

On January 13, 2015, three days before the hearing on the motions to reassess sanctions, Nath filed a motion for continuance of the hearing. In the motion for continuance, Nath argued that he was entitled to "a full evidentiary hearing and trial on all questions and issues of fact," including whether Nath should be sanctioned personally (as opposed to his lawyers). Nath also maintained that due process required a reasonable opportunity to conduct discovery and cross-examine the witnesses against him. TCH and Baylor opposed the motion for continuance on the grounds that the motion for continuance sought, among other things, discovery that was outside the scope of the Texas Supreme Court's "limited remand."

On January 16, 2015, the trial court held a hearing on the motions to reassess sanctions. The trial court first heard argument of counsel regarding the motion for continuance and denied the motion. The court then heard argument on TCH and Baylor's motions to reassess sanctions. The trial court allowed Nath to assert various objections to the evidence attached to the motions, including objections that the supplemental declaration and affidavit were hearsay, contained statements that were conclusory and not based on a factual foundation, and that he had been denied the opportunity to cross-examine the witnesses. The trial court took the motions and objections under advisement.

On January 20, 2015, the trial court granted the motions to reassess and later entered supplemental findings of fact and conclusions of law, in which it

determined that: (1) "no behavior by TCH caused the expenses for which recovery is sought by TCH"; (2) considering *Low* factor (n), $726,000 is the appropriate amount to sanction Nath as it is far less than the actual fees incurred by TCH; (3) "no behavior by Baylor caused the expenses for which recovery is sought by Baylor;" and (4) considering *Low* factor (n), $644,500.16 is the appropriate amount to sanction Nath as it is far less than the actual fees incurred by Baylor.[3]

Nath subsequently filed a motion to obtain a ruling on his objections. The trial court held a hearing on the motion to obtain a ruling and then overruled all of Nath's objections. Nath then timely filed a motion for new trial. The trial court again held a hearing on the motion for new trial and, after hearing argument, denied the motion. This appeal followed.

## ISSUES AND ANALYSIS

On appeal, Nath contends in one issue that the trial court abused its discretion in awarding the sanctions in favor of TCH and Baylor because: (1) the trial court did not hold the proper "evidentiary inquiry" before awarding sanctions; (2) the entire sanctions award was based solely on conclusory and self-serving affidavits of interested witnesses; (3) Nath was refused any discovery or opportunity to cross-examine the affiants about their new expert opinions; (4) the trial court did not hold an evidentiary hearing but instead conducted a "flawed summary judgment-like proceeding;" and (5) the trial court should have granted his motions to disqualify TCH's and Baylor's attorneys from serving as both counsel and expert witnesses. We address each of Nath's arguments in turn.

---

[3] Nath's claims against TCH and Baylor were returned to the trial court from the Texas Supreme Court in their severed state in Cause No. 2006-10826 and Cause No. 2006-10826-A. By agreement of the parties after the hearing on the motions to reassess sanctions, the cases were consolidated.

7

## I. Did the Trial Court Abuse its Discretion in Awarding Sanctions?

In addressing Nath's arguments on appeal, we are guided by well-settled standards of review governing an award of sanctions by a trial court. Because the case comes to us after remand by the Texas Supreme Court with express instructions to the trial court, however, we are also guided by the scope of the remand issued.

A. *Standards of review.*

We review appeals from sanctions orders under an abuse of discretion standard. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004). "An assessment of sanctions will be reversed only if the trial court acted without reference to any guiding rules and principles, such that its ruling was arbitrary or unreasonable." *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009). A trial court has no discretion in determining what the law is or applying the law to the facts. *See Huie v. DeShazo*, 922 S.W.2d 920, 927 (Tex. 1996). We will not find an abuse of discretion in awarding sanctions if some evidence supports the trial court's decision. *Nath v. Texas Children's Hosp.*, 446 S.W.3d 355, 361 (Tex. 2014).

When an appellate court remands a case and limits a subsequent trial to a particular issue, the trial court may only determine that particular issue. *Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986); *Russell v. Russell*, 478 S.W.3d 36, 42 (Tex. App.—Houston [14th Dist.] 2015, no pet.). In a subsequent appeal, instructions given to a trial court in the former appeal will be adhered to and enforced. *Hudson*, 711 S.W.2d at 630; *Russell*, 478 S.W.3d at 42. Even if the remand is limited, the trial court is given a reasonable amount of discretion to comply with the mandate. *Russell*, 478 S.W.3d at 42. To determine the scope of a remand, the appellate court looks to both the mandate and the opinion of the

reviewing court. *Hudson*, 711 S.W.2d at 630.

B. *The Texas Supreme Court's remand.*

The mandate issued by the Texas Supreme Court provides in pertinent part that the case is "remanded to the trial court for further proceedings consistent with this Court's opinion." In its opinion, the Texas Supreme Court remanded for the trial court to reassess sanctions while considering *Low* factor (n). *Low* factor (n) addresses "the degree to which the offended person's own behavior caused the expenses for which recovery is sought." *Nath*, 446 S.W.3d at 372. The Court also stated how the trial court could reconsider what it termed a discrete issue:

> We are confident in the trial court's ability to resolve this discrete issue on remand either on the existing record or, at most, after a hearing examining briefing accompanied by affidavits regarding the degree to which the Hospital and Baylor caused their attorney's fees.

*Id.* at 372 n.30.

TCH and Baylor both filed motions to reassess that included briefing addressing *Low* factor (n) and supplemental affidavits of their lead trial counsel. Nath did not file a response to the motions, nor did he submit any briefing or affidavits related to the degree to which TCH and Baylor may have caused their attorneys' fees.

C. *Nath's arguments on appeal.*

Nath's arguments on appeal challenge the trial court's sanctions award by complaining of the procedure used by the trial court to hear the motions and the competency of the evidence submitted in support of the motions to reassess sanctions. Nath also argues that the sanctions cannot stand because he was not allowed to conduct discovery on what he terms were new opinions stated in the supplemental affidavits of Mizell and Clark, and not allowed to cross-examine the

9

affiants. Finally, Nath argues the trial court abused its discretion by denying his motions to disqualify counsel for TCH and Baylor.

1. *The trial court performed an "evidentiary inquiry."*

Nath argues that "[d]espite the Supreme Court's clear directive to examine the degree to which the Hospital and Baylor bore responsibility for the amount of attorney's fees they incurred, the trial court failed to conduct the necessary factual inquiry." In support of this argument, Nath notes that the party seeking sanctions bears the burden of proof and, without evidence from TCH and Baylor, the record has no information on which the trial court could have determined the remanded *Low* factor (n). We disagree.

Upon remand, TCH and Baylor filed motions to reassess the sanctions against Nath. In the motions, TCH and Baylor pointed out and described the procedural history of the litigation and argued why they believed they did not cause any of the fees they incurred. TCH and Baylor attached supplemental affidavits in support of their motions and also referenced evidence existing in the record. They set their motions for hearing two weeks from the date the motions were filed. Nath had the opportunity to file a response to the motions but did not do so. At the hearing on the motions, the trial court heard argument from all counsel at length. The trial court allowed Nath to lodge objections to the supplemental affidavits offered in support of the sanctions. Although Nath challenges the competency of the supplemental affidavits attached to the motions and the lack of pre-hearing discovery, the trial court did in fact conduct an evidentiary inquiry in accordance with the Texas Supreme Court's instructions for remand. *See Nath*, 446 S.W.3d at 372 n.30 (stating the trial court could determine *Low* factor (n) on the existing record or after a hearing examining briefing accompanied by affidavits). We overrule Nath's argument that the trial court failed to conduct an "evidentiary

10

inquiry."

### 2. *The hearing on remand was proper.*

Nath also argues, somewhat duplicatively, that the trial court abused its discretion in reassessing the sanctions because it failed to conduct a proper evidentiary hearing on remand. Nath cites cases holding that sanctions cannot be assessed without first conducting an evidentiary hearing into the motives and credibility of the person accused of sanctionable conduct. *See., e.g.*, *Alejandro v. Robstown Indep. Sch. Dist.*, 131 S.W.3d 663, 670 (Tex. App.—Corpus Christi 2004, no pet.); *McCain v. NMW Hosps., Inc.*, 856 S.W.2d 751, 757-58 (Tex. App.—Dallas 1993, no writ). The object of such an evidentiary hearing is to obtain evidence regarding the motives and credibility of the party accused of sanctionable conduct. *See Robstown ISD*, 131 S.W.3d at 670 (evidence needed to determine whether pleading filed in bad faith or to harass); *McCain*, 856 S.W.2d at 757 (pleading alone cannot establish bad faith or improper purpose). According to Nath, a similar hearing is required here.

We agree that, to award sanctions, a trial court must have evidence before it to make a factual determination of a sanctioned party's bad faith or improper purpose. *See Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009) (no evidence supported award of sanctions where only evidence offered on what party knew before filing was inadmissible hearsay); *Polansky v. Berenji*, 393 S.W.3d 362, 369-70 (Tex. App.—Austin 2012, no pet.) (trial court abuses its discretion if it awards sanctions based on rule or statute not asserted in the motion or without supporting evidence). In fact, the trial court in this case did have such evidence before it when it initially issued findings of fact and conclusions of law regarding

Nath's bad faith and improper purpose in filing his petitions.[4] The Texas Supreme Court then reviewed that evidence and held there was some evidence to support the trial court's findings and conclusions. *See Nath*, 446 S.W.3d at 365-66, 368, 371.

We disagree with Nath's contention that the only way the trial court could reassess sanctions in this case was after another oral evidentiary hearing. In *Nath*, the Texas Supreme Court remanded the case for further proceedings in the trial court with instructions that did not *require* an additional oral evidentiary hearing. *See Nath*, 446 S.W.3d at 372 n.30 (allowing trial court to examine omitted factor based on existing record or, at most, after a hearing examining briefing accompanied by affidavits); *cf. Low*, 221 S.W.3d at 621−22 ("[W]e remand this case in the interest of justice to allow the parties to present evidence responsive to our guidelines, *if necessary*, and to allow the trial court to consider the amount of the penalty imposed in light of the guidelines in this opinion.") (emphasis added).

These instructions are consistent with Texas Supreme Court precedent regarding the nature of the hearing required before imposing sanctions. In *Cire v. Cummings*, the Texas Supreme Court addressed whether the language requiring

---

[4] Nath states in his brief that despite the findings of fact, "there has yet to be an evidentiary hearing on the Hospital's and Baylor's sanction requests." The record contradicts Nath's argument. When the trial court issued the initial sanctions against Nath, it did so after notice and a hearing at which it took judicial notice of its file and received evidence from Baylor. The trial court also cited in its extensive findings of fact the evidence that was before the court and filed with the sanctions motion of TCH, including ". . . at least fifteen filings in this case, three transcripts from hearings in this case, at least four exhibits, and two depositions, including at least seventeen references to Volumes I and II of Nath's deposition" and Nath's affidavit. The court further stated: "At the September 17, 2010 hearing, Nath's counsel was presented with the opportunity to rebut the evidence in the case file about his conduct and motives throughout this litigation. His counsel declined to present any rebuttal evidence. Nath did not provide any testimony regarding his good faith." This evidence shows that the trial court conducted an evidentiary hearing when it initially awarded sanctions against Nath. *See Corea v. Bilek*, 362 S.W.3d 820, 827-28 (Tex. App.—Amarillo 2012, no pet.) (trial court conducted evidentiary hearing on sanctions motion where it received exhibits at hearing, provided for objections to be made, and reviewed affidavits submitted post-hearing; fact that party did not lodge objections or testify did not change it to non-evidentiary).

"notice and hearing" under Texas Rule of Civil Procedure 215.3 required a trial court to hold an "oral hearing" before imposing a monetary sanction for filing frivolous objections to discovery. 134 S.W.3d 835, 843−44 (Tex. 2004). Reasoning that the term "hearing" does not necessarily contemplate a personal appearance or an oral presentation to the court absent language suggesting otherwise, the Court held the trial court did not abuse its discretion in awarding the sanction without first holding an oral hearing. *Id.* at 844; *see also Santos v. Holzman*, No. 13-13-00273-CV, 2015 WL 3485418, at \*11 (Tex. App.—Corpus Christi 2015, pet. denied) (mem. op.) (applying same rationale to "notice and hearing" language of Texas Rule of Civil Procedure 13); *Van Es v. Frazier*, 230 S.W.3d 770, 776 (Tex. App.—Waco 2007, pet. denied) (under *Cire v. Cummings*, "an identifiable evidentiary hearing" no longer required). Indeed, our court has affirmed an award of sanctions made on submission, rather than by oral hearing, where evidence in the record before the trial court supported the award. *Cognata v. Down Hole Injection, Inc.*, 375 S.W.3d 370, 379-80 (Tex. App.—Houston [14th Dist.] 2012, pet. denied).

We also reject Nath's argument that the sanctions hearing was a flawed "summary judgment-like" proceeding because he was not given the required twenty-one days of notice before the hearing. First, the trial court was not ruling on a summary judgment motion and thus we decline to import the summary judgment twenty-one day notice provision into Rule 13 or Chapter 10. *See* Tex. R. Civ. P. 13 (requiring only "notice and hearing"); Tex. Civ. Prac. & Rem. Code § 10.003 (requiring notice and a reasonable opportunity to respond). Second, the Texas Supreme Court has ruled that six days' notice of a sanctions hearing under section 10.003 of the Texas Civil Practice and Remedies Code is sufficient. *See Low*, 221 S.W.3d at 618 ("Even if Henry had preserved his notice complaint. . . , he had a

13

reasonable opportunity to respond under section 10.003 of the Texas Civil Practice and Remedies Code."). Here, Nath had fourteen days' notice of the hearing on the motion to reassess sanctions. As in *Low*, the notice was sufficient. *Id.*

The trial court in this case complied with both the language in the Texas Supreme Court's opinion in *Nath* and the language of Rule 13 and Chapter 10 concerning notice and a hearing before imposing sanctions. We overrule Nath's arguments that the trial court abused its discretion with regard to the sanctions hearing.

### 3. *The evidence was sufficient to support the sanctions award.*

Having determined that the trial court did not abuse its discretion with regard to the hearing, we now turn to Nath's claim that "there is legally and factually insufficient evidence to support the sanction or any of the findings of fact made by the trial court on remand." We note at the outset that, in determining whether the trial court abused its discretion in awarding the sanctions, we look at whether there is some evidence to support the trial court's findings. *See Nath*, 446 S.W.3d at 361 ("[W]e will not hold that a trial court abused its discretion in levying sanctions if some evidence supports its decision."); *Unifund CCR Partners*, 299 S.W.3d at 97 ("The trial court does not abuse its discretion if it bases its decision on conflicting evidence and some evidence supports its decision."). Thus, we must determine whether some evidence supports the trial court's finding on remand that neither TCH's nor Baylor's conduct caused the fees they incurred, under *Low* factor (n).

#### a. *Low* factor (n).

In the case of *Low v. Henry*, the Texas Supreme Court set forth various factors for trial courts to use in determining an appropriate amount to assess as

14

sanctions. 221 S.W.3d at 620 n.5 (quoting AMERICAN BAR ASSOCIATION, STANDARDS AND GUIDELINES FOR PRACTICE UNDER RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE, reprinted in 121 F.R.D. 101, 104 (1988)). One of the factors listed in *Low* is: "n. the degree to which the offended person's own behavior caused the expenses for which recovery is sought. . ." *Id.*

In *Nath*, the Court explained the relevance of *Low* factor (n) based on the facts of this case. The Court stated:

> A party is entitled to thoroughly and vigorously litigate a matter. But if issues asserted in pleadings are revealed to be frivolous, and the defending party delays moving for summary judgment and sanctions, the defending party adopts some responsibility for the overall increase in litigation costs. Of course, placing the entire cost of litigation on a plaintiff may be proper and deserved if the plaintiff was the party responsible for sustaining frivolous litigation over a prolonged period. Here, the trial court found the defamation claims were frivolous ab initio because the statements were alleged to have been made at least one year before suit was filed. Moreover, the time-barred statements permeated subsequent pleadings. The defendants, however, did not file a summary judgment for years after the allegations were first made. A defending party cannot arbitrarily shift the entirety of its costs on its adversary simply because it ultimately prevails on a motion for sanctions.

*Nath*, 446 S.W.3d at 372. The Court remanded the case to the trial court to reassess sanctions while considering the omitted *Low* factor (n), or the degree to which TCH's and Baylor's own behavior caused the expenses for which they seek recovery.

### b. Evidence of *Low* factor (n).

Nath argues on appeal that there is no evidence to support a finding pursuant to *Low* factor (n) because the supplemental affidavits submitted by TCH and Baylor are incompetent. Nath objected to the affidavits in the trial court,

15

contending that the supplemental affidavits constituted hearsay, were conclusory, and could not be readily controverted.[5] Because the Texas Supreme Court provided that the trial court could consider *Low* factor (n) based on the existing record, we will assume without deciding that the supplemental affidavits were incompetent and look to whether there is some evidence in the existing record to support the trial court's order. *See Nath*, 446 S.W.3d at 372 n.30; *see also Chevron Phillips Chem. Co. v. Kingwood Crossroads, L.P.*, 346 S.W.3d 37, 74 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (noting our duty to independently review entire record to determine whether trial court abused its discretion and that we may uphold the sanctions based on any violation that has support in the record).

The existing record before the trial court consisted of multiple filings, hearing transcripts, deposition testimony, affidavits, and argument of counsel regarding the litigation.[6] The record on remand also consisted of the numerous findings of fact and conclusions of law issued by the trial court in the initial sanctions award that the Texas Supreme Court left intact. The trial court issued supplemental findings of fact stating that it had considered *Low* factor (n) and found no behavior by TCH or Baylor caused the expenses for which recovery was sought. Reviewing only the evidence in the existing record shows:

- Shortly after the litigation began, a jurisdictional battle between Nath and two non-Texas defendants resulted in a practical abatement of the litigation between Nath, TCH, and Baylor, for approximately a year and a half.

---

[5] TCH and Baylor argue that Nath did not timely object to the affidavits on the grounds that they could not be readily controverted. We need not reach this issue, however, because we conclude that existing evidence in the record supports the trial court's order imposing sanctions without reference to the supplemental affidavits.

[6] This evidence was referenced in the trial court's initial findings of fact and conclusions of law.

16

- After the jurisdictional dispute ended, Nath amended his petition to add additional claims for negligent supervision and training. Two months later, Nath again amended his petition to add additional factual allegations concerning the health of Dr. Shenaq.

- The parties litigated the case by written discovery, depositions, and motions and engaged in an unsuccessful mediation. During this time, Nath once again amended his pleading to include a request for declaratory relief regarding Dr. Shenaq.

- Excepting out the time for the jurisdictional battle, Nath, TCH, and Baylor litigated the case for almost a year and a half before the summary judgment motions were filed.

- Once TCH and Baylor filed their motions for traditional and no-evidence summary judgment, another six months passed in which actions by Nath delayed summary judgment. During this time, Nath filed motions for additional discovery, for additional time to file responses and for continuances of the hearings.

- Once the motions were filed, the trial court allowed Nath a continuance to obtain further discovery before responding to the summary judgment motions.

- On the day the motions for summary judgment were to be heard, Nath filed motions for recusal, and then later non-suited all claims while adding a new claim necessitating another round of summary judgment motions, all of which delayed submission of the dispositive motions.

- Additional conduct for which Nath was sanctioned occurred later in the litigation, when he improperly sought information regarding Dr.

Shenaq's health to use in settlement negotiations.

- TCH and Baylor moved for sanctions based on Nath's improper pleadings and his conduct with regard to Dr. Shenaq's health a little over a month after the trial court granted summary judgment.

- TCH had incurred $950,000 in fees up to the time the motion for sanctions was filed, of which $776,607.00 was attributable to the defense of Nath's claims.

- Baylor had incurred $674,824.66 in fees up to the time the motion for sanctions was filed, of which $644,500.16 was attributable to the defense of Nath's claims.

We conclude that this is some evidence to support the trial court's supplemental finding related to *Low* factor (n) and the award of sanctions. Looking at the length and course of the litigation outside of the jurisdictional battle shows that the case was not unusually long. During the time the case was litigated (after the jurisdictional battle and before the motions for summary judgment were filed), both sides engaged in discovery and motions practice for approximately a year and half. Nath amended his pleadings several times. There is nothing in the record indicating that TCH or Baylor did anything unnecessary or unwarranted, such that their own behavior caused the expenses for which recovery was sought. *See, e.g.*, *Odyssey Marine Exploration, Inc. v. The Unidentified Shipwrecked Vessel*, 979 F. Supp. 2d 1270, 1781 (M.D. Fla. 2013) (considering factor (n) in imposing sanctions and finding movant "contributed nothing unnecessary or unwarranted to the fees and costs incurred in this action."); *Matter of Omega Trust*, 120 B.R. 265, 272 (S.D. N.Y. 1990) (referencing movant's unnecessary actions in proving facts at hearing that the plaintiff did not contest).

Moreover, the trial court had some evidence, based on the course of the summary judgment proceedings, to determine that the delay in filing the motions for summary judgment did not cause the fees for which recovery was sought. Nath continued to assert additional claims in his amended pleadings and pleaded that the discovery rule applied to toll limitations. The trial court would likely have allowed Nath to conduct discovery, regardless of when the motions for summary judgment were filed. The initial submission of the motions for summary judgment was in fact delayed while Nath sought additional discovery and time to respond, and filed motions to recuse the judge that delayed submission of the motions.

The only substantive response we can find in the record from Nath with regard to *Low* factor (n) is his argument that the case was pending for several years and that the amount of fees is excessive given that the claims were allegedly "patently frivolous" on their face. Nath's argument does not account for the delay attributed to the jurisdictional battle. And, while the courts ultimately determined that Nath's claims were time-barred ab initio, Nath himself argued the discovery rule tolled limitations and filed responses to TCH's and Baylor's motions for summary judgment that were each in excess of 70 pages and attached 49 exhibits. *See Chambers v. Nasco, Inc.*, 501 U.S. 32, 57 (1991) (rejecting argument that party could have mitigated expenses by filing summary judgment motion earlier because petitioner "himself made a swift conclusion to the litigation by means of summary judgment impossible by continuing to assert that material factual disputes existed."). Nath repeatedly amended his pleadings to assert variations in his claims. Reviewing the existing record as whole, we conclude there is some evidence to support the trial court's finding that neither TCH's nor Baylor's conduct caused the expenses they sought as sanctions.[7]

---

[7] We note that Nath did not file a substantive response to the motions to reassess

## 4. *The discovery arguments lack merit.*

Nath also contends on appeal that the trial court abused its discretion because it did not allow him to first take the deposition of Mizell or Clark and obtain the fee statements underlying Mizell and Clark's supplemental affidavits. According to Nath, the trial court deprived him of the means and opportunity to disprove the statements made in the supplemental affidavits by refusing discovery and not allowing him to cross-examine the witnesses. We reject Nath's arguments.

Nath did not formally seek discovery from TCH or Baylor. He did not serve a deposition notice or issue a request for production of documents with regard to the fees statements. Instead, Nath made an informal request to TCH's counsel asking to take the deposition of Mizell and to review TCH's billing invoices.[8] When TCH declined the request, Nath did not file a motion to compel the discovery nor did he attempt to subpoena any witnesses for the hearing on the motion to reassess sanctions.[9]

Three days before the hearing on the motion for sanctions, Nath did file a motion for continuance of the hearing, in which he argued that he was "entitled to a full evidentiary hearing and trial on all questions and issues of fact," and that due

---

sanctions in the trial court and thus the trial court had no briefing from Nath regarding *Low* factor (n).

[8] The record reflects that on January 2, 2015, Nath's counsel "requested the opportunity from counsel for Defendant to obtain discovery related to the attorneys' fee claims of Defendant, including the deposition of at least one of the potential witnesses (Mr. Mizell) and the production of the billing and related records used and relied upon by Mr. Mizell. . ." and on January 5, 2015 counsel for Defendant "declined to sit for a deposition and oppos[ed] the opportunity for any review of the materials. . .".

[9] Nath knew eleven days before the hearing on the motion to reassess sanctions that TCH and Baylor had declined his informal request for deposition and to review invoices. He did not move to compel the discovery, nor did he issue subpoenas at that time. Nath did issue subpoenas for the hearing on the motion for new trial three months later, but did not do so for the motion to reassess sanctions.

process considerations require a reasonable opportunity to conduct discovery on the issues before the court and a reasonable opportunity to confront and cross-examine the witnesses against him. The trial court denied Nath's motion for continuance to seek discovery. Nath does not set forth a separate issue arguing that the trial court abused its discretion in denying the motion for continuance, but that is the motion in which he sought the discovery about which he complains. We, therefore, review Nath's claim that he was denied discovery under the rules regarding motions for continuance.

In reviewing whether a trial court abuses its discretion in denying a motion for continuance seeking additional time to conduct discovery, courts look at (1) the length of time the case has been on file; (2) the materiality and purpose of the discovery sought; and (3) whether the party seeking the continuance has exercised due diligence to obtain the discovery sought. *See Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004).

In this case, the litigation had been pending for many years at the time the motion to reassess sanctions was filed. Nath did not seek the billing invoices or depositions of Mizell and Clark when the initial sanctions order was issued (even though they had each submitted affidavits in support of the original sanctions award). He had several months after the Texas Supreme Court issued its opinion regarding the missing *Low* factor (n), yet did not seek the discovery until the motion to reassess had been filed and, when his informal request was denied, did not seek to compel the discovery. Under these facts, we do not find that the trial court abused its discretion in not allowing Nath more time to seek discovery. *See State v. Wood Oil Distrib., Inc.*, 751 S.W.2d 863, 865 (Tex. 1988) ("It is also well established that the failure of a litigant to diligently utilize the rules of civil procedure for discovery purposes will not authorize the granting of a

continuance.").

Nath argues that the denial of discovery deprived him of the means and opportunity to controvert the supplemental affidavits. We disagree. Although Nath's current counsel was not counsel at the time of the initial sanctions award, nothing in the record indicates that he could not have obtained testimony from his prior counsel regarding the course of the proceedings. Nath's claim that he was no longer on speaking terms with prior counsel still does not establish that he could not have obtained an affidavit or deposition from prior counsel. Nor does it prevent his current counsel from going through the file to determine the course of the proceedings and present arguments regarding *Low* factor (n). In short, nothing prevented Nath from obtaining his own evidence and making his own arguments related to *Low* factor (n) had he chosen to do so.

Nath cites cases requiring production of underlying invoices for attorneys' fees awards under fee-shifting statutes and depositions of expert witnesses who offer opinions. *See, e.g., City of Laredo v. Montano*, 414 S.W.3d 731, 736−37 (Tex. 2013) (discussing proof of attorneys' fees under lodestar calculation and noting that sometimes contemporaneous records may be required as proof of fees); *Comerica Bank-Tex. v. Hamilton*, No. 05-93-01804-CV, 1997 WL 421214, at *3 (Tex. App.—Dallas 1997, no writ) (refusing to allow expert testimony on fees as a sanction for not producing bills in response to a discovery request); *Hardesty v. Douglas*, 894 S.W.2d 548, 551 (Tex. App.—Waco 1995, orig. proceeding) (expert used in support of motion for summary judgment that was reversed could not be re-designated as consulting only to avoid deposition). We acknowledge the general rules found in these cases but find them inapposite under the facts of this case.

The Texas Supreme Court remanded the case for the trial court to consider one discrete issue—the degree to which the conduct of TCH or Baylor caused their

fees. The Court gave an express instruction on how the trial court could do so on remand. The trial court could do so either on the existing record or, at most, after briefing and affidavits. We do not find an abuse of discretion by the trial court in failing to allow more time for discovery when the trial court conducted the proceeding exactly as the Texas Supreme Court stated. *See Hudson*, 711 S.W.2d at 630 ("Thus, in a subsequent appeal, instructions given to a trial court in the former appeal will be adhered to and enforced.").

The Texas Supreme Court ordered a remand for the trial court to consider the discrete issue of whether the behavior of TCH or Baylor caused the fees they incurred—not for a full evidentiary hearing and trial on all questions and issues of fact.[10] *See Nath*, 446 S.W.3d at 372. The trial court did not abuse its discretion in denying Nath the discovery he sought on remand.

### 5. *The motion to disqualify.*

In the last portion of his issue claiming the trial court abused its discretion, Nath argues the trial court erred by failing to disqualify counsel for TCH and Baylor. Because Nath did not present his motion to the trial court and obtain a ruling, we conclude that Nath has not preserved this issue for review.

To preserve a complaint for appellate review, the record must show that the complaining party presented the complaint to the trial court and that the trial court ruled on the matter either expressly or implicitly. Tex. R. App. P. 33.1(a) (2); *Fox v. Maguire*, 224 S.W.3d 304, 306 (Tex. App.—El Paso 2005, pet. denied). The

---

[10] Although Nath states in his reply brief that "[c]ontrary to the Hospital and Baylor's contention, Dr. Nath did not seek to 'conduct broad ranging discovery into issues he could have sought discovery on back in 2010,'" his motion for continuance stated: "Dr. Nath is entitled to a full evidentiary hearing and trial on all questions and issues of fact." He further argued in his motion that questions remained as to whether Nath was even the "true offender." The trial court did not abuse its discretion by denying Nath more time to address issues outside the scope of the limited remand.

record contains no order denying Nath's motion to disqualify counsel for TCH and Baylor. Nath filed his motion to disqualify on December 24, 2014. He did not set the motion to disqualify for hearing. In his brief, Nath states: "Though Dr. Nath requested a continuance and asked the trial court to rule on the disqualification motion, the trial court denied the request." The trial court did deny the motion for continuance, but Nath has not pointed to any place in the record, nor have we located any, where he asked the trial court to rule on the motion to disqualify.

Nor can we find record support for an implied ruling on the disqualification motion. In his motion for continuance, Nath referenced the existence of the motion to disqualify and noted that no response had been filed. He also stated that, if TCH agreed to withdraw the supplemental affidavit and declaration, the motion to disqualify "would presumably become moot." Nath did not address the disqualification issue at the hearing on his motion for continuance.

In his response to TCH and Baylor's motions to amend the judgment, Nath again referenced the motions to disqualify, but again did not ask the trial court to rule. Nath stated only that if the trial court were to give TCH and Baylor another hearing on the motion to reassess sanctions, the court would need to rule on the pending motions to disqualify. In his motion for new trial, Nath included an argument regarding the motion to disqualify, but mainly argued that the trial court had erred by failing to consider the motion to disqualify before reassessing the sanction.

We see no place in the record where Nath set the motion to disqualify for hearing or even raised the merits of the disqualification issue in person with the trial court. Though he did include an argument on disqualification in his motion for new trial and the motion for new trial was denied, Nath essentially argued that the trial court erred by not considering the disqualification issue before reassessing

24

sanctions, and he did not bring the disqualification issue to the attention of the trial court.

There is no evidence in the record indicating the trial court ever considered the motion to disqualify in order to support an express or an implied ruling on the motion. Because there is no express or implied ruling on Nath's motion to disqualify counsel for TCH and Baylor, he has not preserved his complaint for review. Tex. R. App. P. 33.1(a); *Fox*, 224 S.W.3d at 306; *see generally Risner v. McDonald's Corp.*, 18 S.W.3d 903, 909 (Tex. App.—Beaumont 2000, pet. denied) (refusing to find error in denying motion where record did not indicate motion was ever brought to trial court's attention).

## CONCLUSION

The trial court did not abuse its discretion in reassessing sanctions against Nath in favor of TCH in the amount of $726,000.00 and Baylor in the amount of $644,500.16. Some evidence supported the trial court's supplemental finding of fact and conclusion of law that neither TCH's nor Baylor's conduct caused the fees that were assessed as sanctions pursuant to *Low* factor (n). We, therefore, overrule Nath's sole issue on appeal and affirm the trial court's judgment.


/s/      Ken Wise
         Justice



Panel consists of Justices Jamison, McCally, and Wise.

25