**Affirmed as Modified, Remittitur Suggested, and Memorandum Opinion filed January 21, 2021.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-19-00967-CV
### NO. 14-20-00231-CV

---

### RAHUL K. NATH, M.D., Appellant

### V.

### TEXAS CHILDREN'S HOSPITAL AND BAYLOR COLLEGE OF MEDICINE, Appellees

---

**On Appeal from the 215th District Court
Harris County, Texas
Trial Court Cause No. 2006-10826**

---

## M E M O R A N D U M   O P I N I O N

Fourteen years after the inception of this lawsuit, Dr. Rahul K. Nath, M.D. pursues his third and fourth appeals in this case. In this third appeal, Nath asserts the trial court erred by denying his motion to dismiss brought under the Texas Citizens Participation Act. Nath also contends that he is entitled to an interlocutory appeal with respect to said denial. We overrule the issues in Nath's

third appeal.

In the fourth appeal, Nath raises four issues challenging the sanctions awarded to appellees Texas Children's Hospital (the "Hospital") and Baylor College of Medicine (together with the Hospital, "Appellees"). Specifically, the trial court's final judgment awards the Hospital $726,000 in attorney's fees and awards Baylor $644,500.16 in attorney's fees. The trial court's final judgment also awards the Hospital $489,800 in future appellate attorney's fees.

We sustain in part Nath's challenge to the trial court's future appellate attorney's fees award. We suggest a remittitur of $50,375, which will result in an award of $439,425 for the Hospital's future appellate attorney's fees if accepted. We overrule the remaining issues in Nath's fourth appeal.

## BACKGROUND

## I. The Underlying Litigation and Resulting Sanctions

Nath is a plastic surgeon who was employed by Baylor and affiliated with the Hospital. Nath reported to Dr. Saleh Shenaq, the chief of Baylor's plastic surgery division and Nath's partner at the Hospital's obstetrical brachial plexus clinic. Nath's relationship with his colleagues (including Shenaq) turned acrimonious in 2003, when several doctors complained that Nath billed excessively, performed unnecessary procedures, and treated fellow colleagues in an unprofessional manner.

In February 2006, Nath filed his original petition against Baylor, the Hospital, and Shenaq, claiming the defendants made defamatory statements about Nath that tortiously interfered with his business relationships. Approximately two months later, Nath filed a first amended petition naming two additional defendants. These defendants' addition resulted in a jurisdictional dispute that ended in

2

September 2008, when Nath non-suited the additional defendants in his third amended petition. Nath's third amended petition also asserted additional claims against Baylor and the Hospital.

In November 2008, Nath filed a fourth amended petition alleging Shenaq had been operating on patients while his vision was impaired. Nath filed his fifth amended petition in July 2009 and sought declaratory relief based on Shenaq's alleged health problems. In December 2009, the Hospital filed traditional and no-evidence summary judgment motions with respect to all of Nath's claims. Baylor filed traditional and no-evidence summary judgment motions challenging Nath's claims in January 2010.

After Appellees filed their summary judgment motions, Nath moved to compel additional depositions, extend the deadline to respond to the motions, and continue the summary judgment hearing — all of which were granted. Nath again moved to continue the summary judgment hearing, which was denied. Nath filed motions to recuse both the trial judge and the judge assigned to hear the first recusal motion; both motions were denied.

Nath filed a sixth amended petition, in which he abandoned all of his prior claims and asserted a new claim for intentional infliction of emotional distress. Appellees again moved for summary judgment; Nath did not respond and instead objected to the notice of hearing based on a technical defect. The trial court granted Appellees' summary judgment motions.

Appellees sought sanctions against Nath under Texas Rule of Civil Procedure 13 and chapter 10 of the Texas Civil Practice and Remedies Code. The trial court held hearings on the motions for sanctions and issued sanctions based on, among other things: (1) "Nath's improper purpose in filing the pleadings in this case"; (2) "the bad faith that [Nath's] actions manifest"; and (3) "the lack of

3

any factual predicate for [Nath's] claims, as previously established by the court's orders granting the motions for summary judgment." The trial court explained that its finding of bad faith stemmed from Nath's conduct in seeking information related to Shenaq's health — conduct for which the trial court had previously (and repeatedly) admonished Nash. The trial court concluded that Nath's leveraging of this information in an attempt to obtain a settlement constituted an improper purpose.

The trial court sanctioned Nath in the amount of $726,000 in favor of the Hospital, representing a portion of the Hospital's reasonable fees in defending the suit, and in the amount of $644,500.16 in favor of Baylor, representing a portion of Baylor's reasonable fees defending the suit. The trial court also filed extensive findings of fact and conclusions of law supporting the sanctions orders. Nath appealed.

## II.    *Nath I*

This court upheld the sanctions awards in Nath's 2012 appeal. *See Nath v. Tex. Children's Hosp.*, 375 S.W.3d 403 (Tex. App.—Houston [14th Dist.] 2012), *rev'd*, 446 S.W.3d 355 (Tex. 2014).

Nath pursued his appeal to the Texas Supreme Court. *See Nath v. Tex. Children's Hosp.*, 446 S.W.3d 355 (Tex. 2014) ("*Nath I*"). "[A]gree[ing] with the court of appeals that the trial court properly found Nath's pleadings sanctionable," the supreme court held that "[s]anctioning Nath for pleadings related to Shenaq's health was demonstrably just" and "supported by some evidence". *Id*. at 361, 365. The supreme court also held that the trial court did not abuse its discretion by sanctioning Nath personally, particularly in light of Nath's efforts to seek information about Shenaq's health. *Id*. at 366.

4

The supreme court then addressed the amount of sanctions awarded by the trial court. *See id*. at 371-72. The supreme court noted the trial court considered most of the relevant factors in *Low v. Henry*, 221 S.W.3d 609 (Tex. 2007), which were promulgated to "guid[e] the often intangible process of determining a penalty for sanctionable behavior." *Id*. at 620 n.5. But the supreme court held the trial court failed to address one *Low* factor: the degree to which Appellees' conduct caused the expenses for which they sought recovery. *Nath I*, at 371-72. Specifically, the supreme court noted that "all three parties litigated a host of merits issues for nearly a half-decade before the Hospital and Baylor moved for summary judgment on such grounds as limitations." *Id*. The supreme court remanded the case so the trial court could "examine the extent to which the Hospital and Baylor caused the expenses they accrued in litigating a variety of issues over several years." *Id*. at 373.

## III.    *Nath II*

Back in the trial court, Nath filed several motions, including a motion to disqualify Appellees' counsel and a motion for continuance. Appellees filed motions to reassess sanctions.

The trial court held a hearing on Appellees' motions. On January 20, 2015, the trial court granted Appellees' motions to reassess sanctions and later issued supplemental findings of fact and conclusions of law in which it determined that no behavior by either the Hospital or Baylor caused the expenses for which they sought recovery. The trial court ordered Nath to pay the Hospital $726,000 for its attorney's fees and pay Baylor $644,500.16 for its attorney's fees.

Nath appealed and this court affirmed the trial court's sanctions awards. *See Nath v. Tex. Children's Hosp.*, 576 S.W.3d 728, 743 (Tex. App.—Houston [14th Dist.] 2016), *rev'd*, 576 S.W.3d 707 (Tex. 2019) (per curiam). Nath again pursued

5

his appeal to the Texas Supreme Court. *See Nath v. Tex. Children's Hosp.*, 576 S.W.3d 707 (Tex. 2019) (per curiam) ("*Nath II*"). Reversing this court's decision, the supreme court held that, before fees may be shifted as a sanction, "there must be some evidence of reasonableness". *Id.* at 709. The supreme court pointed out that, on remand, Appellees attempted to prove reasonableness "by submitting two additional conclusory affidavits". *Id.* at 710. Referencing its decision in *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469 (Tex. 2019), the supreme court said it previously "explain[ed] the necessity of presenting either billing records or other supporting evidence when seeking to shift attorney's fees to the losing party." *Nath II*, at 710. The Court then "remand[ed] the case to the trial court for further proceedings in light of *Rohrmoos*." *Id.*

## IV.     Proceedings After the Second Remand

Back in the trial court, Appellees filed separate applications for attorney's fees. Both applications included billing records to substantiate the claimed fees.

Nath aggressively pursued discovery and motion practice that included (1) noticing corporate representative and nonparty depositions related to Appellees' 2010 decisions to seek sanctions; (2) filing a cross-motion for sanctions; (3) filing motions to disqualify Appellees' counsel; (4) filing special exceptions to Appellees' motions for sanctions; and (5) filing a jury demand seeking a retrial of all issues.

Nath also filed a motion to dismiss pursuant to the Texas Citizens Participation Act (the "TCPA"). *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 27.001-.011. Nath set his TCPA motion to dismiss for hearing on December 10, 2019, the same day as the evidentiary hearing on Appellees' fee applications. On December 5, 2019, Nath filed a premature notice of appeal. In the notice, Nath stated the appeal was deliberately premature and filed in the event the trial court

refused to rule on his TCPA motion. This appeal was assigned case number 14-19-00967-CV.

At the December 10 hearing, the trial court heard arguments on Nath's TCPA motion and took it under advisement. The trial court proceeded to hear evidence with respect to Appellees' fee applications.

On December 18, 2019, the trial court entered findings of fact and conclusions of law in which it determined that the evidence supported reassessing sanctions against Nath in the same amounts awarded in 2010: $726,000 for the Hospital's attorney's fees and $644,500.16 for Baylor's attorney's fees. On December 27, 2019, the trial court signed a final judgment ordering Nath to pay these amounts to Appellees. The trial court's final judgment also awards the Hospital $489,800 for its future appellate attorney's fees. With respect to Nath's TCPA motion, the final judgment states:

> Subsequent to this award of attorneys' fees as sanctions, it is further ORDERED, ADJUDGED, AND DECREED that Plaintiff Rahul K. Nath's Motion to Dismiss dated November 18, 2019 is DENIED.

Nath filed a second notice of appeal with respect to the trial court's final judgment, which was assigned case number 14-20-00231-CV. By order dated April 16, 2020, and over Nath's objections, this court consolidated Nath's two appeals.

## ANALYSIS

Nath's two appeals present a total of seven issues. His third appeal focuses on issues related to the trial court's disposition of his TCPA motion to dismiss and his fourth appeal addresses the trial court's sanctions award. We address these issues separately.

7

**I.      Nath's TCPA Motion to Dismiss**

Nath raises three issues with respect to his TCPA motion to dismiss:

1.      Nath is entitled to pursue an interlocutory appeal of the trial court's denial of his TCPA motion to dismiss while the remainder of the case is stayed.

2.      The trial court erred in denying Nath's motion to dismiss.

3.      This court should reverse its decision to consolidate Nath's appeals and stay its review of Nath's second appeal until the interlocutory appeal is resolved.

Because they raise similar arguments, we begin by addressing Nath's first and third issues together.

**A.      Nath Is Not Entitled to Pursue an Interlocutory Appeal of the Denial of His TCPA Motion Independent From the Remainder of the Final Judgment.**

In general, Texas appellate courts have jurisdiction only with respect to final judgments. *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 92 (Tex. 2012). But statutes authorizing interlocutory appeals are a narrow exception to this general rule. *Bonsmara Nat. Beef Co. v. Hart of Tex. Cattle Feeders, LLC*, 603 S.W.3d 385, 390 (Tex. 2020).

Relevant here, the Civil Practice and Remedies Code provides for interlocutory appeal of an order that "denies a motion to dismiss filed under Section 27.003" of the TCPA. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(12). An interlocutory appeal under this section "stays the commencement of trial" and "also stays all other proceedings in the trial court pending resolution of that appeal." *Id*. at (b).

Relying on these provisions, Nath argues he is entitled to pursue an interlocutory appeal from the trial court's denial of his TCPA motion to dismiss

while the remainder of the trial court's final judgment is stayed pending the resolution of that appeal. Nath contends his interlocutory appeal was perfected at the December 10, 2019 hearing or, in the alternative, after the trial court signed its final judgment.

### 1. The December 10 Hearing

We begin with Nath's contention that his interlocutory appeal was perfected at the December 10 hearing when the trial court heard argument on Nath's TCPA motion and took it under advisement. After the trial court took the motion under advisement, Nath asserts that his counsel (1) demanded a ruling on the motion to dismiss; (2) objected to the trial court's refusal to rule; (3) re-urged the objection to the refusal to rule; and (4) objected to the trial court's refusal to rule on that objection. This exchange, Nath argues, constitutes a deemed denial of his TCPA motion to dismiss that perfected his prematurely-filed appeal and invoked a mandatory stay of further proceedings. *See* Tex. R. App. P. 27.1(a) ("In a civil case, a prematurely filed notice of appeal is effective and deemed filed on the day of, but after, the event that begins the period for perfecting the appeal.").

But the cases Nath cites do not support this contention. Two of these cases involve preservation of error and do not address the "deemed denial" of a motion. *See In re W.A.B.*, No. 14-18-00181-CV, 2019 WL 2181205, at *2 (Tex. App.—Houston [14th Dist.] May 21, 2019, no pet.) (mem. op.) (the appellant's challenge to the trial court's denial of his motion for continuance was not preserved where the record did "not show that [appellant] presented the motion for continuance to the trial court with a request for a ruling or otherwise brought it to the trial court's attention before the final judgment was rendered"); *Quintana v. CrossFit Dallas, L.L.C.*, 347 S.W.3d 445, 449 (Tex. App.—Dallas 2011, no pet.) (error was not preserved where the record did not show the appellant brought her motions to the

9

trial court's attention or that the trial court ruled on them).  And in the third case Nath cites, the relator filed a petition for writ of mandamus after the trial court took the relator's chapter 74 motion to dismiss under advisement but failed to issue a ruling for approximately nine months.  *See In re Baylor Coll. of Med.*, Nos. 01-19-00105-CV, 01-19-00142-CV, 2019 WL 3418504, at *1-2 (Tex. App.—Houston [1st Dist.] July 30, 2019, orig. proceeding) (per curiam) (mem. op.).  This case is not analogous to the facts presented here, where the trial court took Nath's motion under advisement and ruled on it nine days later.  These cases do not compel the conclusion that the trial court's actions at the December 10 hearing constituted a "deemed denial" of Nath's TCPA motion to dismiss.

The TCPA explicitly addresses when a motion brought pursuant to its provisions is deemed denied:  when the motion has not been ruled on more than 30 days following the date the hearing on the motion concludes.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(a); *see also Inwood Forest Cmty. Improvement Ass'n v. Arce*, 485 S.W.3d 65, 72 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) ("the motions to dismiss were denied by operation of law as the TCPA requires when the trial court does not rule within the 30-day deadline").  Citing this provision, Nath argues that, "[b]y proceeding to trial on the merits, the trial court 'ruled' that [Appellees'] claims . . . should not be dismissed."  Nath cites no direct authority to support this contention and this court has found none.

Instead, the TCPA provides that, upon the filing of a motion under this section, "all discovery in the legal action is suspended until the court has ruled on the motion to dismiss."  Tex. Civ. Prac. & Rem. Code Ann. § 27.003(c).  If the Legislature had intended for the filing of a TCPA motion to dismiss to stay *all* proceedings, instead of just discovery, it would have stated so in the relevant provision.  *See Cadena Comercial USA Corp. v. Tex. Alcoholic Beverage Comm'n*,

10

518 S.W.3d 318, 325-26 (Tex. 2017) ("We presume the Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen.") (internal quotation omitted). But it did not and we decline to expand the provision beyond its plain meaning. *See id.* at 326 ("we take statutes as we find them and refrain from rewriting the Legislature's text"); *see also In re SPEX Grp. US LLC*, No. 05-18-00208-CV, 2018 WL 1312407, at *3-4 (Tex. App.—Dallas Mar. 14, 2018, orig. proceeding, [mand. dism'd]) (mem. op.) (concluding that the TCPA does not "prohibit a trial court from considering and granting a temporary restraining order or a temporary injunction before deciding a motion to dismiss brought under the TCPA").

We reject Nath's contentions that (1) the trial court's actions at the December 10 hearing constituted a "deemed denial" of his TCPA motion, and (2) the trial court denied his TCPA motion by proceeding to an evidentiary hearing regarding Appellees' fee applications. Therefore, Nath's prematurely-filed appeal was not perfected at the December 10 hearing and Nath was not entitled to a stay of all proceedings.

### 2. The Trial Court's Final Judgment

In addition to awarding Appellees their attorney's fees, the trial court's December 27, 2019 final judgment also explicitly denies Nath's TCPA motion to dismiss. Nath argues that "[t]he TCPA denial portion of the court's order is reviewable in this interlocutory appeal before the rest of the purported final judgment takes effect."

Nath does not cite any authority to support his proposition and this court has found none. Rather, a review of relevant case law shows that the denial of a TCPA motion to dismiss may be considered in conjunction with other relief granted by the trial court. *See, e.g., Petrobras Am., Inc. v. Astra Oil Trading NV*, Nos. 14-18-

11

00728-CV, 14-18-00793-CV, 14-18-00798-CV, 2020 WL 4873226, at *22-25 (Tex. App.—Houston [14th Dist.] Aug. 20, 2020, pet. filed) (mem. op.); *Roach v. Ingram*, 557 S.W.3d 203, 211-12, 216-18, 228-32 (Tex. App.—Houston [14th Dist.] 2018, pet. denied).

We reject Nath's argument that the trial court's denial of his TCPA motion is reviewable in an interlocutory appeal before the rest of the final judgment takes effect.

### 3. Consolidation of Nath's Appeals

After Nath filed his second notice of appeal, Appellees filed a motion to consolidate both appeals, which this court granted. Arguing that this decision should be reversed, Nath contends that consolidation was inappropriate because he has "a statutory right to first pursue an interlocutory appeal of the denial of his TCPA motion to dismiss."

To support this contention, Nath raises the same argument discussed above, namely, that his prematurely-filed appeal was perfected at the December 10 hearing. For the reasons discussed above, we conclude Nath's appeal was not perfected at the December 10 hearing.

We reject Nath's argument regarding the consolidation of his appeals.

### B. The Trial Court Did Not Err by Denying Nath's TCPA Motion to Dismiss.

Asserting that the trial court should deny Nath's TCPA motion, Appellees raised the following arguments in their TCPA response:

- Nath's TCPA motion to dismiss was outside the scope of the Texas Supreme Court's limited remand.

- The TCPA does not apply to Appellees' sanctions motions because the motions were filed in 2010 and the TCPA did not become law

until 2011.

- A motion for sanctions is not a "legal action" subject to dismissal under the TCPA.

- Alternatively, if the court were to find that the TCPA applies, Appellees met their burden of presenting a prima facie case with respect to the elements of their sanctions requests.

Nath challenges these bases on appeal and, in response, Appellees contend each ground is sufficient to affirm the trial court's denial of Nath's TCPA motion. Because we conclude Nath's TCPA motion to dismiss was outside the scope of remand as set out in *Nath I* and *Nath II*, we do not reach the other grounds raised in Appellees' joint response.

When an appellate court remands a case and limits a subsequent trial to a particular issue, the trial court may only determine that particular issue. *Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986); *Russell v. Russell*, 478 S.W.3d 36, 42 (Tex. App.—Houston [14th Dist.] 2015, no pet.). On remand, "the trial court has no authority to take any action that is inconsistent with or beyond the scope of that which is necessary to give full effect to the appellate court's judgment and mandate." *Phillips v. Bramlett*, 407 S.W.3d 229, 234 (Tex. 2013). Moreover, the appellate court's judgment is final "not only in reference to the matters actually litigated, but as to all other matters that the parties might have litigated and had decided in the cause." *Scott Pelley P.C. v. Wynne*, 578 S.W.3d 694, 699 (Tex. App.—Dallas 2019, no pet.) (internal quotation omitted). In interpreting the mandate of an appellate court, the court should look not only to the mandate itself but also to the court's opinion. *Hudson*, 711 S.W.2d at 630.

The facts in *Johnson-Todd v. Morgan*, Nos. 09-17-00168-CV, 09-17-00194-CV, 2018 WL 6684562 (Tex. App.—Beaumont Dec. 20, 2018, pet. denied) (mem. op.), are similar to those presented here. In the first appeal in the *Johnson-Todd*

13

litigation, the appellate court instructed the lower court to dismiss the plaintiff's claims and award the defendant damages and costs. *Id*. at *2. On remand, the plaintiff filed a motion for sanctions and the defendant filed a TCPA motion to dismiss the plaintiff's sanctions motion. *Id*. The trial court denied the defendant's TCPA motion and the defendant appealed. *Id*.

On appeal, the court held that its "instructions in the prior appeal did not allow the trial court to consider [the defendant's] post-remand motion to dismiss . . . under the TCPA". *Id*. Instead, the trial court only was instructed to award the defendant damages and costs. *Id*. Therefore, the trial court "had no authority to consider [the defendant's] post-remand motion to dismiss." *Id*.

Like the first *Johnson-Todd* appeal, the Texas Supreme Court's decisions in *Nath I* and *Nath II* significantly limited the issues remaining to be determined in the underlying proceeding. In *Nath I*, the supreme court concluded the trial court properly found that Nath's pleadings were sanctionable and did not abuse its discretion by imposing those sanctions upon Nath personally. *Nath I*, at 361, 365-66. The supreme court remanded the case solely to permit the trial court to "examine the extent to which the Hospital and Baylor caused the expenses they accrued in litigating a variety of issues over several years." *Id*. at 373.

And in *Nath II*, the supreme court remanded the case to the trial court "for further proceedings in light of *Rohrmoos*." *Nath II*, at 710. The supreme court addressed shifting attorney's fees at length in *Rohrmoos* and reiterated its intention that "the fact finder's starting point for calculating an attorney's fee award is determining the reasonable hours worked multiplied by a reasonable hourly rate". 578 S.W.3d at 498-99. Although "[c]ontemporaneous billing records are not required to prove that the requested fees are reasonable and necessary", such records "are *strongly* encouraged to prove the reasonableness and necessity of

14

requested fees when those elements are contested." *Id*. at 502 (emphasis in original).

Referencing these principles, the supreme court in *Nath II* stated:

> On [the first] remand, the Hospital and Baylor attempted to prove the reasonableness of the awarded fees by submitting two additional conclusory affidavits. Although we expressed confidence in *Nath I* that the reasonableness of the sanction might be resolved on the existing record or through additional affidavits, the subsequent affidavits here merely reference the fees without substantiating either the reasonable hours worked or the reasonable hourly rate. *Rohrmoos* explains the necessity of presenting either billing records or other supporting evidence when seeking to shift attorney's fees to the losing party. Conclusory affidavits containing mere generalities about the fees for working on Nath's frivolous claims are legally insufficient to justify the sanction awarded here.
>
> \*          \*          \*
>
> Because the standard for fee-shifting awards in *Rohrmoos* likewise applies to fee-shifting sanctions, we reverse the court of appeals' judgment affirming the sanctions award and, without hearing oral argument, remand the case to the trial court for further proceedings in light of *Rohrmoos*.

*Nath II*, at 710.

Nath's TCPA motion to dismiss was beyond the scope of what was necessary to give full effect to supreme court's instructions in *Nath I* and *Nath II*. *See Phillips*, 407 S.W.3d at 234. Specifically, Nath's TCPA motion did not address (1) if and how Appellees' conduct in the underlying litigation contributed to their attorney's fees, or (2) the reasonableness and necessity of Appellees' claimed fees. *See Nath I*, at 373; *Nath II*, at 710. Instead, Nath's TCPA motion focused on Appellees' "Sanctions Motions" and the propriety of sanctioning Nath's conduct in the litigation — an issue separate from the calculation of and

evidence necessary to support the requested attorney's fees. Therefore, the trial court had no authority to consider Nath's TCPA motion to dismiss. *See Phillips*, 407 S.W.3d at 234; *Hudson*, 711 S.W.2d at 630; *see also, e.g., Johnson-Todd*, 2018 WL 6684562, at *2.

We overrule Nath's issue regarding the trial court's denial of his TCPA motion to dismiss.

## II. The Trial Court's Final Judgment

Nath raises four issues in his fourth appeal:

1. After it denied Nath's TCPA motion to dismiss, the trial court erred by proceeding to trial on the merits in violation of the automatic stay.
2. The trial court abused its discretion by denying Nath's jury demand.
3. The trial court abused its discretion by awarding $1.37 million in sanctions to Appellees.
4. The trial court erred by awarding the Hospital its future appellate attorney's fees.

Nath's first issue incorporates the arguments previously raised in his appeal from the trial court's denial of his TCPA motion. As we concluded above, these contentions lack merit. We overrule Nath's first issue and proceed to address the remaining three issues.

### A. The Trial Court Did Not Err in Denying Nath's Jury Demand.

After the Texas Supreme Court remanded the case in *Nath II*, Nath filed in the trial court a jury demand "as to all issues". Appellees filed a motion to strike Nath's jury demand and the trial court granted the motion to strike in an order signed December 2, 2019. Asserting the trial court abused its discretion by granting Appellees' motion to strike, Nath argues that "[u]nder *Nath II* and *Rohrmoos*, [he] is entitled to have a jury determine the amount (if any) of

reasonable and necessary compensatory attorney's fees awarded against him."

But neither *Nath II* nor *Rohrmoos* state that attorney's fees sought as sanctions must be tried to a jury. *See Nath II*, at 708-10; *Rohrmoos*, 578 S.W.3d at 483-505. Moreover, the Texas Supreme Court previously has held that a party complaining about an award of attorney's fees as sanctions does not have the right to a jury trial on the amount of the sanction. *See Brantley v. Etter*, 677 S.W.2d 503, 504 (Tex. 1984) (per curiam). In *Brantley*, the plaintiff was awarded monetary sanctions for attorney's fees because of the defendant's failure to comply with discovery orders. *Id*. The defendant appealed and the court of appeals affirmed the judgment with respect to the imposition of sanctions but concluded the defendant "was entitled to a jury trial on the issue of attorney's fees". *Id*. Reversing this determination, the supreme court stated:

> There is, however, language in the opinion of the court of appeals from which it could be inferred that one complaining of the award of attorney's fees as sanctions has the right to a jury trial to determine the amount of such attorney's fees. We do not think it was the intent of the court of appeals to provide for this, but as their opinion is susceptible to such interpretation, ***we expressly hold that the amount of attorney's fees awarded as sanctions for discovery abuse is solely within the sound discretion of the trial judge***, only to be set aside upon a showing of clear abuse of that discretion.

*Id*. (emphasis added); *see also Cantu v. Comm'n for Lawyer Discipline*, No. 13-16-00332-CV, 2020 WL 7064806, at *41 (Tex. App.—Corpus Christi Dec. 3, 2020, no pet. h.) (mem. op.) (citing *Brantley* to support conclusion that the appellant "did not have a constitutional right to a jury to determine his sanction in a disciplinary proceeding"); *Melasky v. Warner*, No. 09-11-00447-CV, 2012 WL 5960310, at *4 (Tex. App.—Beaumont Nov. 29, 2012, pet. denied) (mem. op.) ("When the trial court imposes sanctions, a party is not entitled to a jury determination concerning the amount the trial court may choose to award as sanctions.").

17

Nath does not cite any authority that warrants deviating from this precedent; instead, the cases on which Nath relies examine issues different from the one presented here. *See Transcont'l Ins. Co. v. Crump*, 330 S.W.3d 211, 227-232 (Tex. 2010) (examining "whether a judge or jury decides attorney's fees under Texas Labor Code § 408.221(c)"); *Smith v. Patrick W.Y. Tam Trust*, 296 S.W.3d 545, 547-49 (Tex. 2009) (concluding there was no evidence to support the jury's refusal to award any attorney's fees); *CHCA Woman's Hosp., L.P. v. Uwaydah*, No. 01-18-00220-CV, 2020 WL 4299567, at *9 (Tex. App.—Houston [1st Dist.] July 28, 2020, no pet.) (mem. op.) (after concluding the trial court, as fact finder, erred by rendering a take-nothing judgment on the defendant's counterclaim for breach of contract, the court remanded for a new trial on the issue of attorney's fees); and *Pisharodi v. Columbia Valley Healthcare Sys., L.P.*, No. 13-18-00364-CV, 2020 WL 2213951, at *7-10 (Tex. App.—Corpus Christi May 7, 2020, no pet.) (the nonmovant, whose suit was dismissed pursuant to the TCPA, was entitled to a jury determination as to the amount of the movant's statutory "reasonable attorney's fees" under the TCPA).

We overrule Nath's issue challenging the trial court's denial of his jury demand.

**B.      Sufficient Evidence Supports the Trial Court's Sanctions Awards.**

Challenging the sanctions awards in the trial court's final judgment, Nath argues (1) the trial court abused its discretion in refusing to allow Nath to present evidence regarding his personal actions during the litigation, and (2) Appellees' "heavily redacted timesheets and billing records are not legally sufficient evidence" to support the awards. We reject both arguments.

**1.      Evidence Regarding Nath's Involvement in the Litigation**

According to Nath, he "repeatedly requested that the trial court allow him to

18

present evidence, on cross-examination and through his expert witness, concerning to what extent [he] engaged in conduct warranting sanctions." Nath argues that the trial court's exclusion of this evidence "runs afoul of the Texas Supreme Court's decision in *Nath I* and was in error."

We review a complaint regarding the admission or exclusion of evidence under an abuse of discretion standard. *Mandell v. Mandell*, 214 S.W.3d 682, 691 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (citing *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995)). A trial court abuses its discretion when it acts in an unreasonable or arbitrary manner, or without reference to any guiding rules or principles. *Merrill v. Sprint Waste Servs. LP*, 527 S.W.3d 663, 669 (Tex. App.—Houston [14th Dist.] 2017, no pet.). "[W]e must uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling." *Id*.

As we discussed above with respect to Nath's challenge to the denial of his TCPA motion, on remand the trial court's authority is limited to those determinations necessary to give full effect to the appellate court's judgment and mandate. *See Phillips*, 407 S.W.3d at 234; *Hudson*, 711 S.W.2d at 630. In *Nath I*, the Texas Supreme Court remanded this case with respect to a single issue: to determine the extent to which Appellees caused the expenses they sought to recover as attorney's fees. *Nath I*, at 373. And in *Nath II*, the supreme court remanded this case for a second time for "further proceedings in light of *Rohrmoos*", which "explain[ed] the necessity of presenting either billing records or other supporting evidence when seeking to shift attorney's fees". *Nath II*, at 710.

The trial court did not abuse its discretion by concluding that evidence regarding Nath's personal actions during the litigation was irrelevant to the determinations remaining after *Nath I* and *Nath II*. Moreover, in *Nath I*, the supreme court examined evidence addressing "whether the sanction was visited on

19

the true offender." *Nath I*, at 366. "[R]eject[ing] Nath's argument and conclud[ing] the trial court did not abuse its discretion in labeling Nath the true offender", the supreme court held:

> Nath's conduct surrounding Shenaq's health appears to be less about pursuing a legal redress for an injury (the province of the attorney) and more about seeking irrelevant personal information (an extrajudicial desire of the client). While litigation is contentious by definition and often utilized to compel a desired end, we agree with the trial court that, on these facts, using a legal mechanism to force damaging, irrelevant information into the public domain and thereby compel a more favorable settlement constitutes an improper purpose.

*Id*. Against this backdrop, it was reasonable for the trial court to conclude that evidence regarding Nath's involvement in the litigation was not relevant to the issues remaining to be resolved.

We overrule Nath's challenge to the trial court's exclusion of evidence addressing his personal actions during the litigation.

## 2. Redacted Portions of Appellees' Billing Records

Citing collectively to hundreds of pages of billing records attached as exhibits to Appellees' fee applications, Nath contends that Appellees' "heavily redacted timesheets and billing records are not legally sufficient evidence to support the award."

Appellees filed approximately 350 pages of billing records with their fee applications. The billing records also were admitted into evidence at the hearing on Appellees' fee applications. Some of the entries in the Hospital's billing records are fully redacted and provide no information about their contents; similarly, some of the entries included in Baylor's billing records have a line running through the included information.

20

At the hearing, Patrick Mizell (one of the Hospital's attorneys) testified as follows with respect to the redacted entries in the Hospital's billing records:

> So we have in 2010 when I did this originally, I segregated fees which were not directly attributable to Nath's claims and so when you see it blacked out from left to right all the way across, ***that is for entries that we are not seeking fees*** . . . .

(emphasis added). And Shauna Clark (one of Baylor's attorneys) testified that these "strike throughs" in certain entries in Baylor's billing records represent "portions of the fees for which Baylor is not seeking reimbursements through sanctions."

As this testimony shows, the redacted entries of which Nath complains represent fees Appellees are not seeking to recoup as sanctions. Nonetheless, Nath asserts that "simply because [Appellees] are not seeking those amounts in this case does not mean that the information in those redacted records was not relevant and admissible." Nath does not cite any caselaw or other authority to support this contention.

We reject Nath's argument. *Nath I* and *Nath II* remanded this case for a determination regarding Appellees' roles in causing the fees they sought to recover as sanctions and whether those fees were reasonable. *See Nath II*, at 710; *Nath I*, at 373. Because the redacted entries do not represent fees Appellees sought to recover, they do not render the evidence legally insufficient to support the trial court's sanctions award.

Rather, considered in light of *Rohrmoos*, the unredacted billing records constitute legally sufficient evidence supporting the trial court's sanctions award. In *Rohrmoos*, the supreme court stated that it intended for the "lodestar analysis to apply to any situation in which an objective calculation of reasonable hours worked times a reasonable rate can be employed" to determine the amount of

attorney's fees to be awarded. 578 S.W.3d at 497-98. "[T]here is a presumption that the base lodestar calculation, when supported by sufficient evidence, reflects the reasonable and necessary attorney's fees that can be shifted to the non-prevailing party." *Id*. at 499.

"Sufficient evidence includes, at a minimum, evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services." *Id*. at 498. "General, conclusory testimony devoid of any real substance will not support a fee award." *Id*. at 501. Although billing records are not required to meet these requirements, such records "are *strongly* encouraged to prove the reasonableness and necessity of requested fees when those elements are contested." *Id*. at 502 (emphasis in original).

The evidence and testimony admitted at the hearing on Appellees' fee applications satisfy this standard. The Hospital filed as an exhibit 172 pages of billing records showing the legal work performed with respect to Nath's case against the Hospital. Each entry in the billing records includes (1) the date the work was performed, (2) the person who performed the work, (3) a description of the work, (4) the time spent, and (5) the amount charged. The end of each billing invoice also lists the timekeepers that worked on the matter, the hours they spent, and the total amount charged for each person. The billing records show that this work was performed from March 6, 2006 (approximately two weeks after Nath filed his original petition) through November 22, 2010 (after the trial court ruled on Nath's motions for new trial).

At the December 10 hearing, Mizell testified that the total fees charged to the Hospital during this period were $1,000.043.61. Mizell said that, "based on

[his] analysis of the invoices and the segregation [he] performed," $802,498 was "directly attributable to the Hospital's defense of Nath's claims against it[.]" Mizell said the Hospital was seeking fees of $726,000, which was the original sanctions amount awarded by the trial court in 2010.

Mizell also provided a summary of the legal work performed with respect to Nath's claims over this four-year period. According to Mizell, he did not "believe [the Hospital's attorneys] caused any of the fees or contributed to the fees in the sense that we did anything to prolong the litigation or do anything that caused any of these fees, other than defending the claims by Dr. Nath."

Baylor filed as an exhibit 182 pages of billing records showing the legal work performed on Nath's case against Baylor. Each entry in the billing records includes (1) the date the work was performed, (2) the person who performed the work, (3) the time spent, and (4) a description of the work. The end of each billing invoice also lists (1) the timekeepers that worked on the case, (2) the amount of time each timekeeper spent working on the matter, (3) each timekeeper's rate, and (4) the total fee for each timekeeper. The billing records show that this work was performed from March 1, 2006 through June 24, 2020.

At the December 10 hearing, Clark testified that the total amount charged to Baylor for this time period was $688,260.13. Clark testified that $644,500.16 was "directly attributable to Baylor's defense against Dr. Nath's claims in this lawsuit[.]"

Like Mizell, Clark also provided a summary of the legal work performed for Baylor with respect to Nath's claims. When asked whether Baylor "caused or contributed to any portion of the fees it [sought] as sanctions in this case", Clark responded, "Absolutely not."

23

Considered in light of *Rohrmoos*'s standards and this case's lengthy history, this testimony and Appellees' billing records are legally sufficient evidence to support the trial court's sanctions awards.

We overrule Nath's legal-sufficiency challenge.

## C. The Hospital's Future Appellate Attorney's Fees Award is Not Supported by Legally Sufficient Evidence.

In his final issue, Nath asserts the trial court abused its discretion by awarding the Hospital future appellate attorney's fees, arguing (1) the Hospital "failed to plead for an award of future appellate fees, and (2) "[n]o evidence" supports the appellate attorney's fees award.

### 1. The Hospital's Pleadings

At the December 10 hearing, Mizell testified regarding the Hospital's request for its future appellate attorney's fees. In its final judgment, the trial court awarded the Hospital $489,800 in future appellate fees "conditioned upon the Hospital prevailing on any appeal of this case by Nath." Nath contends on appeal that the Hospital's failure "to ever plead for future appellate attorney's fees" is fatal to its recovery.

Under Texas Rule of Civil Procedure 301, the trial court's judgment must conform to the pleadings. Tex. R. Civ. P. 301. But issues not raised in the pleadings can be tried by express or implied consent of the parties. Tex. R. Civ. P. 67; *see also Flowers v. Flowers*, 407 S.W.3d 452, 457 (Tex. App.—Houston [14th Dist.] 2013, no pet.). The unpleaded issue may be deemed tried by consent when evidence on the issue is developed without objection under circumstances indicating both parties understood the issue was being contested. *See Ingram v. Deere*, 288 S.W.3d 886, 893 (Tex. 2009); *Adeleye v. Driscal*, 544 S.W.3d 467, 484 (Tex. App.—Houston [14th Dist.] 2018, no pet.). "The trial court has broad

24

discretion to determine whether an unpleaded issue was tried by consent." *Adeleye*, 544 S.W.3d at 484.

During Mizell's testimony on the Hospital's future appellate attorney's fees, Nath did not object to this evidence as being outside the Hospital's pleadings. Therefore, it was within the trial court's discretion to conclude that the issue of the Hospital's future appellate attorney's fees was tried by consent. *See Ingram*, 288 S.W.3d at 893; *Adeleye*, 544 S.W.3d at 484; *see also, e.g., Mansfield v. Mansfield*, No. 04-18-00551-CV, 2019 WL 6138984, at *4 (Tex. App.—San Antonio Nov. 20, 2019, pet. denied) ("Because [the appellant's] attorney did not object to the absence of any pleadings when the trial court addressed the issue of an award of appellate attorney's fees, we hold the issue was tried by consent."); *Sheen v. Sheen*, No. 03-18-00358-CV, 2019 WL 2554570, at *5 (Tex. App.—Austin June 21, 2019, no pet.) (mem. op.) (issue of appellate attorney's fees was tried by consent when the appellee's attorney "testified regarding his trial and appellate fees without objection").

With respect to this line of testimony, the only objection Nath raised addressed the foundation for Mizell's opinion:

> Objection, Your Honor. Lack of foundation on the part of this witness with regard to what appellate fees may or may not be with regard to any matter or this mater. There's not been a proper foundation with regard to this witness.

This objection was not sufficient to make the trial court aware of the issue Nath now raises on appeal, *i.e.*, whether appellate attorney's fees were outside the scope of the Hospital's pleadings. *See* Tex. R. App. P. 33.1(a).

We overrule Nath's argument that the Hospital failed to plead for an award of future appellate attorney's fees.

25

## 2.     Evidentiary Sufficiency

Nath argues that there is "no evidence" to support the trial court's award of the Hospital's future appellate attorney's fees.

"When reviewing a trial court's award of attorney's fees, we must ensure the record contains sufficient evidence to support such an award." *Yowell v. Granite Operating Co.*, __ S.W.3d __, 2020 WL 2502141, at \*12 (Tex. May 15, 2020) (applying *Rohrmoos* to an issue challenging the sufficiency of the evidence to support an award of contingent appellate fees). "The party seeking attorneys' fees bears the burden of proof and must supply enough facts to support the reasonableness of the amount awarded." *Id.* Specifically, to recover contingent appellate fees, the party with the burden of proof must "provide opinion testimony about the services it reasonably believes will be necessary to defend the appeal and a reasonable hourly rate for those services." *Id.* at \*13.

At the December 10 hearing, Mizell testified that he represented the Hospital on both prior appeals in this case. Mizell also said he has handled "approximately 35, 40 appeals over [his] career." Mizell testified that he had argued in the court of appeals on ten separate occasions, including in the appeal that preceded *Nath I*.

Mizell provided the following testimony about the fees that would be incurred in each stage of the appellate process if Nath pursues an appeal:

- Appeal to the intermediate court of appeals:  Mizell opined that an appeal through this stage would incur $196,700 in attorney's fees. Included in this number were the following estimates for attorneys' work on the matter:  (1) Stacey Vu working 70 hours at $850/hour; (2) Kathy Smith working 70 hours at $760/hour; and (3) Brooke Noble working 200 hours at $420/hour.

- Petition for review to the Texas Supreme Court: Mizell opined that an appeal through this stage would incur $96,950 in attorney's fees. Included in this number were the following estimates for attorneys'

26

work on the matter: (1) Vu working 25 hours at $850/hour; (2) Smith working 25 hours at $760/hour; and (3) Noble working 135 hours at $420/hour.

- Merits briefing at the Texas Supreme Court: Mizell opined that an appeal through this stage would incur $96,950 in attorney's fees. Included in this number were the following estimates for attorneys' work on the matter: (1) Vu working 25 hours at $850/hour; (2) Smith working 25 hours at $760/hour; and (3) Noble working 135 hours at $420/hour.

- Oral argument at the Texas Supreme Court: Mizell opined that an appeal through this stage would incur $48,825 in attorney's fees. Included in this number were the following estimates for attorneys' work on the matter: (1) Vu working 22.5 hours at $850/hour; (2) Smith working 22.5 hours at $760/hour; and (3) Noble working 30 hours at $420/hour.

These estimates are the same as those included in Mizell's affidavit, which was filed as an exhibit to the Hospital's attorney's fee application. The combined total for these parts of the appellate process equal $439,425 in future appellate attorney's fees. Mizell testified that these fees "are in keeping with similar top-flight appellate lawyer rates in Houston, Harris County and in the State of Texas."

The trial court's final judgment awarded the Hospital $489,800[1] in future appellate attorney's fees — $50,375 more than the amounts Mizell testified to at the evidentiary hearing. The record does not contain any evidence to support this additional amount. Therefore, although the evidence is legally sufficient to support a finding of some amount of future appellate attorney's fees, it is legally insufficient to support the entire amount awarded in the trial court's final judgment. *See, e.g., Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. &*

---

[1] The trial court's future appellate attorney's fees award is apportioned as follows: (1) $196,700 in the event of an appeal to the intermediate court of appeals; (2) $99,200 in the event of a petition for review to the Texas Supreme Court; (3) $96,950 in the event of merits briefing at the Texas Supreme Court; and (4) $96,950 in the event oral argument is granted at the Texas Supreme Court.

*Research Corp.*, 299 S.W.3d 106, 123-24 (Tex. 2009); *Corral-Lerma v. Border Demolition & Envtl. Inc.*, 467 S.W.3d 109, 127-18 (Tex. App.—El Paso 2015, pet. denied).

An appellate court possesses the inherent power in a civil case to suggest a remittitur under Rule 46.3 of the Texas Rules of Appellate Procedure when an appellant complains there is insufficient evidence to support an award and the appellate court agrees but concludes there is sufficient evidence to support a lesser award. Tex. R. App. P. 46.3; *see, e.g., Enzo Invs., LP v. White*, 468 S.W.3d 635, 654-55 (Tex. App.—Houston [14th Dist.] 2015, pet. denied). Accordingly, we suggest to the Hospital a remittitur of $50,375, which will result in a future appellate attorney's fee award of $439,425 if accepted. *See* Tex. R. App. P. 46.3.

## CONCLUSION

In his third appeal, case number 14-19-00967-CV, Nath asserted three issues raising two arguments: (1) he was entitled to an interlocutory appeal with respect to the trial court's denial of his TCPA motion to dismiss, and (2) the trial court erred by denying his TCPA motion. We overrule these issues.

In his fourth appeal, case number 14-20-00231-CV, Nath raised four issues asserting the trial court (1) erred by proceeding to trial on the merits; (2) abused its discretion by denying Nath's jury demand; (3) abused its discretion by awarding $1.37 million in sanctions to Appellees; and (4) erred by awarding the Hospital its future appellate attorney's fees. We overrule Nath's first, second, and third issues.

We sustain Nath's fourth issue in part with respect to the insufficiency of the evidence to support the award of $489,800 to the Hospital for its future appellate attorney's fees. We suggest a remittitur of $50,375. If the Hospital files in this Court a remittitur of $50,375 within fifteen days after the issuance of our opinion,

we will reform the trial court's judgment to award $439,425 in future appellate attorney's fees and affirm the judgment as reformed.

If the suggested remittitur is not filed, we will remand to the trial court the issues of the amount of, and liability for, the Hospital's attorney's fees. *See* Tex. R. App. P. 44.1(b); *see also, e.g., Range v. Calvary Christian Fellowship*, 530 S.W.3d 818, 843 (Tex. App.—Houston [14th Dist.] 2017, pet. denied). Accordingly, subject to the Hospital's acceptance of our suggestion of remittitur, we affirm the judgment as modified.

/s/   Meagan Hassan
Justice

Panel consists of Justices Wise, Bourliot, and Hassan.

29